# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

| | |
|---|---|
| ERIC YOUNG, Individually and on behalf of all others similarly situated, ) ) | |
| ) | Civil Action No.  5-16-cv-09788 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ACT FAST DELIVERY OF WEST VIRGINIA, INC., et. al, ) ) | |
| ) | |
| Defendants. ) | |

## THE OMNICARE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Eric Young, contracted with Act Fast to provide delivery services for its customers in West Virginia, including Omnicare.  In this suit, Plaintiff alleges that he was misclassified as an independent contractor, in violation of the Fair Labor Standards Act and West Virginia law, and claims that Omnicare and Act Fast were his joint employer.

The undisputed evidence shows that Omnicare did not direct, control, supervise, hire, fire, discipline, manage, evaluate, or even pay Plaintiff.  Instead, Plaintiff controlled his own work, and Omnicare is several steps removed from all other terms and conditions of his relationship with Act Fast.  Absent an employment relationship, Omnicare cannot be held liable on any of Plaintiff's claims.  As such, the Court must grant summary judgment in favor of Omnicare.

## I.      FACTUAL BACKGROUND

### A.      Act Fast is an independent service provider for Omnicare.

Omnicare contracts with long-term care facilities to provide them with patient pharmaceuticals–including narcotics–out of its two West Virginia-based pharmacies, located in

Morgantown and Nitro.  (Borman Depo. 7-8[1]; Ennis Depo. 10[2]; Lockard Depo. 27-31[3]). Omnicare's contracts with its customers include standard terms, like payment and duration, as well as customer requirements, such as number of deliveries and specific delivery locations. (Lockard Depo. 27-39, 122; Ennis Depo. 23-25).

To serve its clients across the country, Omnicare utilizes different independent delivery service companies to deliver pharmaceuticals to its long-term care clients.  (Borman Depo. 7-9). In 2012 and 2015,[4] Omnicare selected Act Fact as its West Virginia delivery service following requests for proposals.  (Borman Depo. 9).  Act Fast and Omnicare's resulting contracts specify that:  (1) Act Fast's couriers are not Omnicare employees; (2) Act Fast is solely responsible for hiring, firing, disciplining, directing, and controlling the couriers; (3) Act Fast is responsible for compensating the couriers; and (4) Act Fast must comply with all laws respecting the couriers. (OMNICARE000001-000055, 000088-000138).

### B.    Plaintiff contracted with Act Fast to provide delivery services.

Plaintiff began providing contract work to Act Fast in late summer 2012.  (Young Depo. 29-30[5]).  On deliveries, Plaintiff drove his own vehicle, used an Act Fast-provided scanner, and wore a shirt with Act Fast's logo.  (Young Depo. 22, 32-36, 39-42, 42-44, 154; Hicks Depo. 89[6]).

---

[1] "Borman Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit A to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[2] "Ennis Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit B to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[3] "Lockard Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit C to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[4] Prior to 2012, Omnicare contracted with Business As Usual to perform courier services for its West Virginia locations; then, in 2017, Omnicare contracted with U.S. Pack for these services.  (Borman Depo. 9; Lockard Depo. 79; Casto Depo. 27).
[5] "Young Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit D to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[6] "Hicks Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit E to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.

As a contract courier, Plaintiff drove both regularly scheduled routes (preset deliveries to long-term care facilities in a given area) and "STATs" (urgent deliveries).  (Young Depo. 101-02).  Plaintiff chose his routes.  (Young Depo. 202).  When a STAT delivery arose, Plaintiff chose whether to accept or decline it, and exercised this option.  (Young Depo. 58, 143-47, 151-52).

Act Fast determined Plaintiff's rate of pay and compensated him per route in lump sum payments.  (Young Depo. 57-63; Hicks Depo. 130-32).  Plaintiff's monthly pay varied based on the work he accepted from Act Fast.  (Young Depo. 57-60).

Act Fast alone supervised Plaintiff and directed his employment.  (Young Depo. 185-87, 202-03).  Act Fast issued Plaintiff's performance evaluations and disciplinary action and promoted him to "head driver" based on his performance.  (Young Depo. 187-88, 202-03, 224-25).  Act Fact terminated Plaintiff's contract on July 4, 2015, after approximately three years.  (Young Depo. 89, 89-96).  Omnicare, on the other hand, had no say in Plaintiff's position, pay, promotions, or evaluations.  (Young Depo. 23, 57-63, 187-90, 220-21),

## C.   Omnicare did not have the power to hire or fire Plaintiff or the other couriers.

Couriers did not apply for positions with Omnicare and did not receive any assistance or feedback from Omnicare when completing their applications with Act Fast.  (Young Depo. 31, 182-84, Hicks Depo. 42-43, 74-77, 169).  Omnicare did not conduct background checks or drug tests on prospective couriers and did not receive the results from any such clearances.  (Hicks Depo. 93-94, 97-98; Young Depo. 184-85).

If an applicant was selected by Act Fast, Omnicare was not: (1) in contact with that individual, (2) involved in Act Fast's decision to classify that individual as an independent contractor or employee, or (3) involved in the decision to promote or to terminate the contract

with that individual.  (Young Depo. 182-84, 187-88, 201; Lockard Depo. 176-77).  When Plaintiff's contract with Act Fast was terminated, Plaintiff did not inform Omnicare.  (Young Depo. 201, 225).

### D.     Omnicare did not control or supervise Plaintiff or the other couriers.

Omnicare did not assign couriers to particular routes or request a particular courier take a STAT.  (Young Depo. 202, Hicks Depo. 214; Zierer Depo. 52[7]; Lockard Depo. 128, 173).  If a courier could not drive on a given day, the courier did not notify Omnicare, but instead contacted Act Fast.  (Young Depo. 234; Hicks Depo. 185-86).  Omnicare did not train couriers.  (Ennis Depo. 59-60; Hicks Depo. 100-03, 214-15; Zierer Depo. 31-33).  Omnicare neither evaluated the couriers' performance nor administered their discipline.  (Young Depo. 202-203, 224-25; Ennis Depo. 74-79; Lockard Depo. 101-02, 175-77; Martinez Depo. 42[8]).  At most, Omnicare relayed customer complaints regarding the couriers to Act Fast.  (Casto Depo. 30-32[9]; Ennis Depo. 74-79; Lockard Depo. 100-02; Hicks Depo. 191-94).  It was then Act Fast's sole responsibility to address any courier issues, including considering specific requests made by Omnicare's customers.  (Casto Depo. 30-32, 64-65; Ennis Depo. 74-79; Lockard Depo. 100-02; Hicks Depo. 169-70, 191-94).

### E.     Omnicare did not perform any of the other functions typically performed by an employer with respect to the couriers, such as payroll, benefits, and providing equipment.

Omnicare provided no equipment (uniforms, computers, email addresses, vehicles, or scanners) to Act Fast's couriers.  (Young Depo. 22, 32-36, 42-44, 190-91, 218-20).  Couriers

---

[7] "Zierer Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit F to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[8] "Martinez Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit G to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.
[9] "Casto Depo.___" refers to the relevant pages of testimony, which are attached as Exhibit H to the Appendix of Exhibits in Support of the Omnicare Defendants' Motion for Summary Judgment filed contemporaneously herewith.

used their own cars or cars rented by Act Fast.  (Young Depo. 154, Hicks Depo. 183-185).

Omnicare played no role in determining the couriers' rate of pay.  (Young Depo. 23, 57-63, 190, 220-21; Hicks Depo. 130-31).  Omnicare did not pay the couriers, take deductions from the couriers' paychecks, or provide them with IRS Forms W-2 or 1099.  (Young Depo. 220-21).

The couriers did not have regular access to Omnicare's pharmacy, but remained in Act Fast's "driver waiting area" until an Omnicare employee allowed them into the pharmacy to retrieve their deliveries.  (Young Depo. 216; Hicks Depo. 166; Martinez 28; Borman Depo. 151).

### F.     Omnicare must comply with federal and state laws in dispensing pharmaceuticals.

The pharmaceutical industry is highly-regulated by both federal and state law.  (Lockard Depo. 26-27, 87-89, 93-97, 118, 202, 204; Borman Depo. 29-30, 75).  For example, Omnicare is required to maintain chain of custody records for its pharmaceuticals, pursuant to requirements from the Drug Enforcement Agency, Medicare, and Medicaid.  (Lockard Depo. 87-89, 117-18; Borman Depo. 29-30; Casto Depo. 41; Ennis Depo. 37-39, 61).  To that end, when preparing pharmaceuticals for delivery, Omnicare creates a manifest with a bar code identifying the recipient facility and patient.  (Ennis Depo. 41; Martinez Depo. 28-29, 33-34).  To maintain a chain of custody, the manifest detailing the pharmaceuticals being delivered must be scanned and a nurse must acknowledge receipt with a signature.  (Casto Depo. 31-32, 36-37, 41, 56; Ennis Depo. 33, 46, 48, 56-57; Hicks Depo. 123, 157-60; Martinez Depo. 29, 33-35; Lockard Depo. 114-19; Borman Depo. 29-30).

Similarly, Centers for Medicare and Medicaid Services require all individuals entering long-term care facilities have proper identification.  (Zierer Depo. 34-35).  Thus, Act Fast requires that couriers wear identification.  (Borman Depo. 74-75).  While Omnicare notified Act Fast of this regulation, Omnicare has no specific mandates, guidelines, rules, or regulations that

extend to the Act Fast couriers.  For example, Omnicare does not require the couriers wear a certain uniform, carry any particular identification, or place any type of placard on their vehicle. (Borman Depo. 29-30, 75).

## II.   LEGAL STANDARD

Summary judgment must be granted where, as here, "the 'depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials' show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Muzichuck v. Forest Labs., Inc.*, No. 1:07CV16, 2015 U.S. Dist. LEXIS 5440, *14-15 (N.D. W.Va. Jan. 16, 2015) (Keeley, J.) (citing Fed. R. Civ. P. 56(a), (c)(1)(A)).  "The 'mere existence of a scintilla of evidence' favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonable find for the nonmoving party."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)).  "Self-serving statements are not enough to defeat a motion for summary judgment."  *Chafin v. State Farm Fire & Cas. Co.*, No. 2:03-0153, 2003 U.S. Dist. LEXIS 28746, *4 (S.D. W.Va. Nov. 20, 2003).

## III.   ARGUMENT

### A.   Omnicare was not Plaintiff's employer or joint employer.

Plaintiff asserts that Act Fact and Omnicare were his joint employers.  There is no basis for such a finding.

"To determine whether an entity is a joint employer, a court must take into account the 'real economic relationship' between the employee, employer, and putative joint employer." *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683, 688-89 (D. Md. 2010) (citing *Schultz v. Capital Int'l Sec. Inc.*, 466 F.3d 298, 306 (4th Cir. 2006); *Tony and Susan Alamo Found. v. Sec'y*

*of Labor*, 471 U.S. 290, 301 (1985)).   In making this determination, courts examine the "circumstances of the whole activity."  *Schultz*, 460 F.3d at 603.

The Fourth Circuit Court of Appeals recently explained that the fundamental question in joint employer analysis is "whether two or more persons or entities are 'not completely dissociated' with respect to a worker such that the persons or entities share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment."  *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017) (internal citations omitted).  For this analysis, the Fourth Circuit laid out a six-factor test:

(1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;

(2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141-42.   The undisputed and material facts establish Omnicare was not Plaintiff's employer.

**1.  Omnicare did not direct, control, or supervise Plaintiff in the execution of his delivery duties (the first *Salinas* factor).**

Omnicare had no control, direct or otherwise, over Plaintiff and other Act Fast couriers.

Plaintiff admitted that he—not Omnicare—chose his regular route schedule and that he reported to Act Fast, not Omnicare.  (Young Depo. 185-87, 202).  He also admitted that Omnicare provided no handbooks, policies, or procedures.  (Young Depo. 219-20).  All equipment needed to perform his job duties was his own (his vehicle) or was supplied by Act Fast (the scanner). (Young Depo. 32-36, 39-42, 154, 190-92, 218-20).  When requesting time off, he communicated with Act Fast, not Omnicare.  (Young Depo. 134, 213-14, 234-35).

Because Omnicare provided pharmaceuticals and instructions for delivering the pharmaceuticals however, Plaintiff claims that Omnicare "controlled" his work.  Even if true, requiring compliance with state and federal laws and customer-specific instructions/quality control measures is not the type of control necessary to establish a joint employment relationship.

### Compliance with state and federal law is not sufficient to establish control.

Requiring compliance with government regulations does not trigger joint employer liability.  *See Godlewska v. HDA*, 916 F. Supp. 2d 246, 259 (E.D.N.Y. 2013); *see also Hall v. Apt. Inv. & Mgmt. Co.*, No. C 08-03447 CW, 2011 U.S. Dist. LEXIS 156888, *21 (N.D. Cal. Feb. 18, 2011) (". . . requiring a subcontractor to comply with government regulations . . . does not trigger joint employer liability."); *Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1155-56 (C.D. Cal. 2003) (finding that Bebe Stores' review for quality control purposes and compliance with applicable labor laws did not result in the requisite amount of control for joint employment); *Tumulty v. Fedex Ground Package Sys.*, No. C04-1425MJP, 2005 U.S. Dist. LEXIS 26215, *8-9 (W.D. Wash. Mar. 4, 2005) (holding that ensuring that hiring of contract drivers complied with DOT regulations did not constitute "hiring power" for purposes of joint employment); *Matson v. 7455, Inc.*, No. CV 98-788-HA, 2000 U.S. Dist. LEXIS 23013 (D. Or.

Jan. 14, 2000) (granting summary judgment to defendant nightclub owners who imposed "house rule" to ensure compliance with statute); *Herman v. Mid-Atlantic Installation Servs.*, 164 F. Supp. 2d 667, 673 (D. Md. 2000) (holding that requiring compliance with safety standards did not demonstrate "control" as exercised by an employer).

Similarly, a business requiring its subcontractors follow federal and state laws does not render it a joint employer of the subcontractors' employees. *Hall*, 2011 U.S. Dist. LEXIS 156888 at *21. Instead, in these situations, "the company is not controlling the [worker], the law is." *FedEx Home Delivery v. NLRB*, 563 F.3d 492, 501 (D.C. Cir. 2009); *see also NLRB v. Associated Diamond Cabs Inc.*, 702 F.2d 912, 920 (11th Cir. 1983) ("control, in order to evidence employee status, must be control by the employer, not simply employer oversight of control exercised by a regulatory governmental body"); *Wilkinson v. Palmetto State Transp. Co.*, 676 S.E.2d 700, 703 (S.C. 2009) ("the strong regulatory presence concerning motor carriers reflects control by the government, not the motor carrier").

By law and regulations, Omnicare must demonstrate an unbroken chain of custody for its pharmaceuticals, including narcotics. (Borman Depo. 14-15, 59, 71, 154, 162-63; Casto Depo. 31-32, 35-36, 37; Ennis Depo. 33, 36, 49; Martinez Depo. 32-33). Additionally, by West Virginia state law, Act Fast's couriers occasionally pick up unused non-narcotics from long-term care facilities so that Omnicare can return and process the unused medication as a credit to patients. (Lockard Depo. 32-35). These instructions to Act Fast regarding the manner in which couriers must deliver pharmaceuticals to Omnicare's customers are dictated by state and federal law. This does not make Omnicare an "employer" of Act Fast's couriers. That is simply "the nature of their business." *Jacobson*, 740 F. Supp. 2d at 691.

*Quality control and providing customer-specific information is not the type of control contemplated by* **Salinas.**

Courts consistently grant summary judgment on joint employment claims when the putative joint employer does not "control" the daily terms and conditions of employment but rather only engages "in the oversight necessary to ensure that a contractor's services meet contractual standards of quality and timeliness." *Salinas*, 848 F.3d at 148 (citing *Moreau*, 356 F.3d at 951). Plaintiff claims that Omnicare's activities were not merely necessary oversight, but controlled his day-to-day work activities, as in *Salinas*. But, in *Salinas*, the putative joint employer exceeded the typical amount of supervision by engaging in daily oversight of the plaintiffs' work; providing regular feedback and instruction; and conducting frequent meetings to instruct the plaintiffs regarding projects they needed to complete, the methods they should use, and the safety protocols they should follow. *Id.*

The same is not true here. Any "control" exercised by Omnicare over the couriers was for the purposes of quality control and customer service (as well as compliance with state and federal regulations, discussed *supra*). The exercise of "control" for such purposes is "qualitatively different" from the control exercised by an employer over an employee. Courts focus on the *kind* of control, rather than the *degree* of control exercised by a putative joint employer. *See, e.g.*, *Lepkowski v. Telatron Mktg. Group*, 766 F. Supp. 2d 572, 579-80 (W.D. Pa. 2011) (citing *Jacobson*, 740 F. Supp. 2d at 690-91); *Moreau v. Air France*, 356 F.3d 942 (9th Cir. 2003) (finding that Air France was not a joint employer of ground crew members despite extensive supervision, specific performance requirements, and rigid quality control, because this was all directly related to customer service and safety); *Grenawalt v. AT&T Mobility, LLC*, 937 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) ("Taking measures to ensure quality control does not prove control over the conditions of employment."); *Zampos v. W&E Commc'ns.*, 970 F. Supp.

2d 794, 804 (N.D. Ill. 2013) (granting summary judgment for Comcast because its "quality control and compliance-monitoring" …stem[med] from the nature of the goods [and] services being delivered" and was "qualitatively different from control that stems from the nature of the relationship between" employer and employees); *Lawrence v. Adderley Indus.*, No. CV-09-2309, 2011 U.S. Dist. LEXIS 14386 (E.D.N.Y. Feb. 11, 2011) (granting summary judgment to defendant, finding that it did not employ technicians where quality control stemmed from the nature of the defendant's business and was designed partly to protect customers whose homes technicians entered).[10]

For example, in *Jacobson*, the court held that Comcast was not a joint employer of its subcontractor's technicians, despite Comcast's extensive supervision. *See Jacobson*, 740 F. Supp. 2d at 691. Comcast demanded that technicians adhere to specific standards, regularly monitored their work, dictated their appointments times, and scrutinized their completed work to ensure that it complied with certain requirements. *Id.* Despite this substantial control, the court concluded that Comcast was *not* a joint employer. *Id.* The court explained that "Comcast's quality control procedures ultimately stem from the nature of their business and the need to provide reliable service to their customers, not the nature of the relationship between the technicians and Comcast." *Id.* The court distinguished Comcast's extensive control over product quality and customer satisfaction from its lack of control over the working conditions of technicians, noting the former is "qualitatively different from the control exercised by employers over employees." *Id.* at 692.

---

[10] Courts routinely grant summary judgment on this basis. *Zhao*, 247 F. Supp. 2d at 1160 (holding that because it was for the purpose of quality control, even constant monitoring of putative employees cannot establish a joint employer relationship); *Godlewska*, 916 F. Supp. 2d at 259 ("Exercising quality control by having strict standards and monitoring compliance with those standards does not constitute supervising and controlling employees' work conditions."); *Flemming v. Rem Conn. Cmty. Servs.*, No. 3:11cv689, 2012 U.S. Dist. LEXIS 180678, *10-11 (D. Conn. Dec. 20, 2012) (noting that supervision over quality control intended to protect customers is insufficient to create an employment relationship); *Lockett v. Allstate Ins. Co.*, 364 F. Supp. 2d 1368, 1377-78 (M.D. Ga. 2005) (holding that monitoring results and insuring accuracy do not equate to controlling manner and means of work).

Similarly, in *Lepkowski*, the plaintiffs claimed that Bank of America was their joint employer because, among other things, it directly trained them concerning its products, procedures, and protocols and closely oversaw their day-to-day work—including monitoring their phone calls with customers to ensure that they followed certain procedures and protocols (which involved reading from a script prepared by Bank of America). *Lepkowski*, 766 F. Supp. 2d at 579. Despite these allegations, the court found that no joint employer relationship existed, noting that "these measures reflect precisely the type of quality control and customer service supervision that courts have consistently held to be qualitatively different from the control exercised by an employer over an employee." *See id.* at 579-80.

So too here. Omnicare exercised substantially *less* control than the putative joint employers in *Salinas*, *Jacobson*, and *Lepkowski*. Omnicare unequivocally did not schedule the couriers, monitor performance, evaluate performance, recommend discipline, conduct meetings with couriers, issue training materials, or provide written feedback to couriers. (Young Depo. 198-99, 202-03, 218-20, 224-25; Casto Depo. 30-32; Ennis Depo. 74-79; Lockard Depo. 100-02, 175-77; Hicks Depo. 191-94). (Young Depo. 218-20). The only control Omnicare exercised over the couriers was merely quality control, as in *Jacobson* and *Lepkowski*. Crucially, Omnicare did not exercise control for the purposes of joint employer liability by dictating destinations and delivery times for its pharmaceuticals. Omnicare set the release times for pharmaceuticals, structured its service requirements to meet the long-term care facilities' desired drop-off times and dictated by customer and patient medical needs. (Lockard Depo. 29, 122). Plaintiff was free to drive whatever route, or accept whatever STAT, he wanted—without Omnicare's input or approval despite Omnicare's pre-existing route structure, identifying various customers on a given route. (Young Depo. 58, 143-47, 151-52, 202; Hicks Depo. 131, 136-37,

143, 214-16; Lockard Depo. 128, 173).   Such customer service-driven, quality control requirements have routinely been held to be an insufficient level of control to confer joint employer liability.[11]

Furthermore, that Omnicare relayed delivery complaints about couriers to Act Fast also does not establish the requisite level of control.  *Zampos*, 970 F. Supp. 2d at 804; *see also Jean-Louis v. Metro. Cable Communs., Inc.*, 838 F. Supp. 2d 111, 127 (S.D.N.Y. 2011) ("At most, the evidence shows that Time Warner provided the results of quality control assessments to Metro, discussed them on a general level in monthly meetings, and occasionally inquired about what Metro planned to do about the worst performing technicians.  That evidence cannot justify an inference of joint employment").  Similarly, here, Omnicare did nothing more than pass along customer complaints.

Omnicare in no way sought to control couriers as an employer would.  Omnicare's sole focus was to ensure that its customers receive the pharmaceuticals they ordered on time and that all legal requirements were met along the way.  To suggest that this somehow made Omnicare a joint employer requires a finding that the United States and West Virginia governments and Omnicare's customers, who were the true sources of the requirements, are also a joint employer.

---

[11]    *See Beacon Flag Car Co., Inc. v. Unemploy. Comp. Bd.*, 910 A.2d 103 (Pa. Commw. Ct 2006) (customer's control over time and destination of trip not indicia of control); *see also Penn v. Virginia Int'l Terminals, Inc.*, 819 F. Supp. 514, 524-25 (E.D. Va. 1993) (a delivery company "could hardly service its customers' needs if this was left to the discretion of the drivers. If a shipper requested, say, a parcel delivery service, to pick up a package for delivery across the country the next day, before a certain time, it could not be seriously argued that the delivery service became the employee of the shipper."); *Wilson-McCray v. Stokes*, No. 01 C 1929, 2003 U.S. Dist. LEXIS 22225, *19 (N.D. Ill. Dec. 9, 2003) (requiring shipments to be completed within twenty-four hours is not indicative of control but rather "making sure that its customers received their goods in a timely manner; and the fact that it monitored this process to ensure prompt delivery no more creates an agency relationship than does the designation of overnight delivery in a Federal Express package."); *Cristler v. Express Messenger Sys., Inc.*, 89 Cal. Rptr. 3d 34 (Cal. Ct. App. 2009) (customer specified delivery times do not provide evidence of control by a motor carrier); *McLaine v. McLeod*, 661 S.E.2d 695, 700 (Ga. Ct. App. 2008) (instructions on where and when to pick up freight were not evidence of control because "the specific places and times were set by the shipper").

### 2. Omnicare did not have the authority to hire or fire Plaintiff or the couriers (the second *Salinas* factor).

Omnicare had no authority to hire and fire the couriers, and did not conduct or receive the results of any background checks or drug tests conducted on prospective couriers, absent a government investigation.  (Young Depo. 182-85, 201; Hicks Depo. 42-43, 74-77, 93-94, 97-98, 169).

Plaintiff's own admissions defeat his claim on this factor.  Plaintiff admitted that he did not apply for work with Omnicare and did not receive any assistance from anyone at Omnicare in applying for the courier position.  (Young Depo. 31, 182-84).  Plaintiff was selected by Act Fast, not Omnicare, and he signed an independent contractor agreement with Act Fast, not Omnicare.  (Young Depo. 183-84, 191-92).  Once accepted, Omnicare had no authority to promote, or recommend promotion of a courier to another position.  (Young Depo. 187-88).  Omnicare was not involved in the termination of his contract.  (Young Depo. 201).  In fact, after his contract was terminated, Plaintiff did not inform Omnicare.  (Young Depo. 225).

### 3. Omnicare did not perform ordinary functions carried out by an employer with respect to Plaintiff and the couriers (the sixth *Salinas* factor).

Omnicare did not set Plaintiff's rate of pay.  (Young Depo. 57-63; Hicks Depo. 130-31). Omnicare did not issue Plaintiff a paycheck, provide Plaintiff with any benefits, or issue him an IRS Form W-2 or 1099.  (Young Depo. 220-21).  Omnicare did not provide Plaintiff with a uniform or any equipment to perform his job duties.  (Young Depo. 190-91, 219-20).

Omnicare did not provide any training to the couriers or hold meetings with couriers to discuss their jobs.  (Young Depo. 127-28, 198-99).  No Omnicare employee evaluated Plaintiff's performance.  (Young Depo. 202-03).  No one at Omnicare disciplined the couriers.  (Young Depo. 224-25; Ennis Depo. 74-79; Lockard Depo. 101-02, 175-77; Martinez Depo. 42).  Rather,

by virtue of Omnicare's relationship with its customers, if Omnicare received any complaints about the couriers, it merely passed them on to Act Fast management.  (Casto Depo. 30-32; Ennis Depo. 74-79; Lockard Depo. 100-02; Hicks Depo. 191-94).   There is no indicia of a traditional employment relationship between Act Fast couriers and Omnicare.

   **4.   The remaining *Salinas* factors also collectively weigh against finding a joint employer relationship between Omnicare and Act Fast (the third, fourth, and fifth *Salinas* factors).**

   **i.   Omnicare and Act Fast had no lasting relationship (the third *Salinas* factor).**

   Act Fast provided courier services to Omnicare as part of a twelve (12) month contract that could be terminated by Omnicare at any time, with or without cause.  (OMNICARE000009-10; OMNICARE000096-97).   Throughout their business relationship, Act Fast provided courier services to other companies, and Omnicare used multiple other couriers at its other locations. (Hicks Depo. 19; Borman Depo. 5-11).   In fact, Omnicare's relationships with its contracted courier companies shifted substantially over time in response to its business needs.   (Borman Depo. 5-12).    In doing so, Omnicare's sole concerns were efficiency and effectiveness (particularly in terms of logistics), with no regard for the closeness or duration of its relationship with the courier companies.  (Borman Depo. 11-12).

   The relationship between Omnicare and Act Fast ended in June 2017 when Omnicare discontinued its relationship with Act Fast in favor of U.S. Pack, another third party courier company.  (Borman Depo. 105-106; Lockard Depo. 79; Casto Depo. 27).   There was nothing permanent and enduring about the relationship between Act Fast and Omnicare so as to find a joint employment relationship.

### ii.  Omnicare had no control over Act Fast (the fourth *Salinas* factor).

The only thing that ties Act Fast and Omnicare together is their courier contract.  Neither company has any form of ownership interest in the other.  And neither company has any control over the other.[12]  Plaintiff's arguments that Omnicare "controlled" Act Fast fail for the same reason his arguments that Omnicare "controlled" the couriers fail.  The only "control" exercised by Omnicare was for the purpose of legal compliance, quality control, and customer satisfaction. *See supra* Part III(A)(1).  All of this is merely compliance with contractual terms dictating their limited relationship.  This "control" is fundamentally different from the type of control asserted by an employer. *See supra Part III(A)(1).*

### iii.  The couriers did not perform work on any premises owned by Omnicare (the fifth *Salinas* factor).

The courier's main function is to deliver items, and thus, the courier's vehicle is their work premises.  *Likes v. DHL Express (USA), Inc.*, No. 2:08-cv-00428-AKK, 2012 U.S. Dist. LEXIS 188599, *24-25 (D. Al. Mar. 7, 2012).  That the couriers picked up pharmaceuticals at an Omnicare facility is in no way indicative of a joint employer relationship.  The couriers were only permitted inside Omnicare's facility after an Omnicare employee granted them access at pick-up time.  (Borman Depo. 16-17, 68; Casto Depo. 25; Ennis Depo. 98, 105; Martinez Depo. 25).  After pick-up, the couriers performed their job—delivering pharmaceuticals—using their own vehicle.  *See id.* at *26-27 (finding that the putative joint employer's ownership of the warehouse was not dispositive because the couriers' worksite was their delivery vehicles, not the warehouse).

---

[12] In fact, this Court ruled that Omnicare's corporate meeting minutes were irrelevant to the instant case, as they did not even mention Act Fast.  (ECF No. 65).

### B.  Omnicare was previously found to not be a joint employer with Act Fast.

In considering a similar case, the United States District Court for the Northern District of West Virginia held that Omnicare was not the joint employer of Act Fast couriers in Morgantown under identical circumstances.  *Dalton v. Omnicare, Inc.*, 138 F. Supp. 3d 709 (N.D. W. Va. 2015) (Keeley, J).  Although this opinion predates *Salinas*, Judge Keeley examined the fundamental threshold question at the heart of the Fourth Circuit's opinion—whether Omnicare codetermined the essential terms and conditions of the Act Fast couriers' work.

In granting summary judgment in Omnicare's favor and finding that Omnicare and Act Fast were not joint employers, the *Dalton* court focused on a few key factors—(1) Omnicare had no authority to hire or fire Act Fast couriers, that it merely communicated customer satisfaction and did not directly supervise or control the couriers' working conditions, (2) Omnicare did not determine couriers' rate or method of payment, and (3) Omnicare did not maintain any employment records for couriers.  *Id.* at 717-19.  These facts are nearly *identical* to the facts analyzed and applied by the Fourth Circuit Court of Appeals in *Salinas*.  Thus, Judge Keeley's opinion supports a finding that Omnicare was not a joint employer here, either.

### C.  Omnicare did not improperly classify Plaintiff and the couriers as independent contractors.

Because Omnicare and Act Fast are not joint employers, only Omnicare's actions with respect to the couriers' terms and conditions can be evaluated for misclassification purposes. *Hall*, 846 F.3d at 767.  "In determining whether a worker is an employee covered by the FLSA, a court considers the 'economic realities' of the relationship between the worker and the putative employer."  *Schultz*, 460 F.3d at 601 (quoting *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994)).  "The focal point is whether the worker 'is economically dependent on the

business to which he renders service or is, as a matter of economic [reality], in business for himself.'" *Id.* Courts are to apply a six-factor test to determine whether a worker is an employee or an independent contractor:

> (1) The degree of control that the putative employer has over the manner in which the work is performed;
>
> (2) The worker's opportunities for profit or loss dependent on his managerial skill;
>
> (3) The worker's investment in equipment or material, or his employment of other workers;
>
> (4) The degree of skill required for the work;
>
> (5) The permanence of the working relationship; and
>
> (6) The degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 601-602 (citing *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000)); *see also Henderson*, 41 F.3d at 570; *see generally United States v. Silk*, 331 U.S. 704 (1947). Assuming a relationship between Plaintiff and Omnicare exists at all, it is that of an independent contractor.

Notably, the consideration of whether Plaintiff was misclassified are nearly identical to the *Salinas* factors. For the reasons set forth above, Omnicare had no control over Plaintiff's day-to-day work.[13] *See also Taylor v. Waddell & Reed Inc.*, No. 9-cv-2909, 2010 U.S. Dist. LEXIS 81920, *8 (S.D. Cal. Aug. 12, 2010); *see also Smith v. Exxon Corp.*, 647 A.2d 577, 582

---

[13] *See Weary v. Cochran*, 377 F.3d 522, 526 (6th Cir. 2004) (compliance with legal guidelines as stated in corporate manual "is not the type of control that establishes an employer/employee relationship"); *EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 748 (7th Cir. 1998) (extensive state regulation reflected in school corporation's policies were not employment indicia); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 262 (4th Cir. 1997) ("Because of the overarching demands of the medical profession, the tension in professional control between doctors and hospitals for medical services rendered at hospitals is not, we believe, a reliable indicator of whether the doctor is an employee or an independent contractor at the hospital"); *Murray v. Principal Fin. Grp., Inc.*, No. CV 08-1094-PHX-SRB, at 10 n.4 (D. Ariz. Jul. 14, 2009) ("[s]imply requiring Plaintiff to comply with laws and regulations related to insurance (a heavily-regulated industry) does not rise to the level of control an employer has over an employee"), *aff'd*, 613 F.3d 943 (9th Cir. 2010); *Travelers Equities Sales, Inc. v. Div. of Emp't Sec.*, 927 S.W.2d 912, 918 (Mo. Ct. App. 1996) (enforcing controls dictated by NASD, SEC, and state law was not evidence of employment relationship).

(Pa. Super. 1994) ("We are of the opinion that standards concerning the appearance of personnel . . . do not amount to Exxon having control over the manner in which the work is accomplished").[14]

Similarly, as discussed above, Plaintiff used his own equipment or it was provided to him by Act Fast. (Young Depo. 38-42, 154). Omnicare did not provide him with any equipment necessary for performing his job responsibilities as a courier.

Moreover, Omnicare and Plaintiff had no relationship whatsoever. Plaintiff did not apply for work with Omnicare. (Young Depo. 31, 182-84). Plaintiff did not contract with Omnicare to render services. (Young Depo. 184). When Plaintiff's contract with Act Fast was terminated, he did not inform Omnicare. (Young Depo. 201, 225). Indeed, even if Plaintiff's contract was not terminated by Act Fast in 2015, he would not necessarily have a relationship with Omnicare today. Act Fast and Omnicare are no longer under contract, and thus his contract would have to be through another courier service – U.S. Pack. As such, there is no permanence whatsoever in any purported relationship between Plaintiff and Omnicare.

Tellingly, Plaintiff testified that he completed his taxes as a contractor and took business deductions only available to independent contractors. (Young Depo. 177-80). This in and of itself evidences a finding of independent contractor status. *Herman*, 164 F. Supp. 2d at 675 (holding that the fact that the installers paid their own insurance premiums and taxes as self-employed contractors indicated that the installers were independent contractors "especially considering the expense of a truck or van[, which is ] not normally borne by employees") (citing

---

[14] The uniform requirement has also been held universally to not be indicative of an employer-employee relationship. *FedEx Home Delivery v. NLRB*, 563 F.3d 492, 501 (D.C. Cir. 2009) (requirement to wear uniform intended to ensure customer safety and was not indicative of putative employer's control); *DeSouza v. EGL Eagle Global Logistics, LP*, 596 F. Supp. 2d 456, 464-65 (D. Conn. 2009) (wearing uniforms is "ancillary to [a contractor's] independent driving" and not inconsistent with the independent contractor status); *Hilldrup Transfer & Storage of New Smyrna Beach, Inc. v. Dep't of Lab. & Employment Sec.*, 447 So.2d 414, 417 (Fla. Ct. App. 1984) (uniforms irrelevant to determination of employment status because the uniform requirement sprang from concerns related to customer safety).

*Dole*, 729 F. Supp. at 76-77 ("finding that costs of tools, vehicle, and insurance constitute a significant investment and contrast sharply with the experience of a typical clerical employee, who finds all of his office supplies waiting for him at his work-station, freely provided by the employer").

## IV.    CONCLUSION

Omnicare contracts with independent service providers who are responsible for hiring or retaining couriers.  These couriers make deliveries as they see fit in accordance with their own schedules, absent Omnicare's direction or control.  Act Fast's employment decisions with respect to its couriers, including their classification as independent contractors, are not be attributable to Omnicare.  In short, Omnicare is not Plaintiff's joint employer with Act Fast.  Accordingly, this Court must grant the motion for summary judgment in its entirety.

Dated:   <u>November 15, 2017</u>                  Respectfully submitted,

                                          JACKSON LEWIS P.C.


                                          By <u>*s/ Bethany S. Wagner*</u>
                                          Marla N. Presley, Esq.
                                          WV I.D. No. 9771
                                          Marla.presley@jacksonlewis.com
                                          Bethany S. Wagner
                                          WV I.D. No. 11341
                                          Bethany.wagner@jacksonlewis.com
                                          1001 Liberty Ave., Suite 1000
                                          Pittsburgh, Pennsylvania  15222
                                          (412) 232-0404
                                          (412) 232-3441 facsimile

                                          *Counsel for the Omnicare Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the Omnicare Defendants' Memorandum of Law in Support of their Motion for Summary Judgment was served upon all counsel of record via the Court's ECF system.

By *s/ Bethany S. Wagner*
Bethany S. Wagner