UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| ERIC YOUNG, Individually and on behalf of all others similarly situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ACT FAST DELIVERY OF WEST VIRGINIA, INC., et. al, )<br>)<br>)<br>Defendants. ) | Civil Action No.  5-16-cv-09788 |

## THE OMNICARE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR DECERTIFICATION

In February 2017, Plaintiff Eric Young ("Young") filed a Motion for Conditional Certification, requesting that the Court conditionally certify this matter as an FLSA collective action, because he and the other individuals who contracted to provide delivery services for Defendants Act Fast Delivery of West Virginia, Inc. and Act Fast Delivery, Inc. (collectively "Act Fast") were similarly situated (*See* ECF No. 31).

Since that time, however, Young has testified under oath that he could "*always*" negotiate "*all*" of the terms of his independent contractor agreement with Act Fast, which formed the parameters of his working relationship with them.  Young's ability to negotiate the terms of his contractual relationship with Act Fast was not merely theoretical—it is undisputed that he actually made meaningful, material changes to his independent contractor agreement, including provisions that related directly to his compensation.  These admissions refute the allegations in Young's Motion for Conditional Certification, and undermine the very contention on which his request for conditional certification was based:  That he and the other drivers are similarly

situated because they all signed "uniform" independent contractor agreements that subjected them to the same terms and created identical obligations.

Because each Opt-In Plaintiff could individually negotiate any and all of the terms of the independent contractor agreement that formed the basis of his relationship with Act Fast, the determination of whether he was properly classified as an independent contractor necessarily requires an individualized, fast-specific inquiry. Under these circumstances, the misclassification claims of Young and the Opt-In Plaintiffs cannot be resolved on an aggregate basis, and the collective action must be decertified.

I. RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

Young performed delivery services as an independent contractor of Act Fast.[1] (*See* ECF No. 1.) He brings this action on behalf of himself and others purported to be similarly situated, alleging that Act Fast improperly classified them as independent contractors, and thus failed to properly pay wages and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"). (*See id.*) Young asserts these same claims against the Omnicare Defendants based on a joint employment theory of liability. (*See id.*)

In February 2017, Young moved the Court to conditionally certify this case as a collective action under the FLSA, arguing that he and the putative class members "signed uniform contracts" under which all drivers were treated "in a uniform fashion." (*See* Plaintiff's Motion for Conditional Certification, ECF No. 31, p. 7-9.) Relying on those representations, the Court granted Young's Motion for Conditional Certification and conditionally certified a collective action on August 10, 2017. (*See* Memorandum Opinion and Order, ECF No. 145.)

---

[1] The undisputed facts relating to Young's provision of delivery services in connection with his relationship with Act Fast are described more fully in the Omnicare Defendants' Motion for Summary Judgment (ECF. Nos. 208 and 209), currently pending before the Court. Those undisputed facts are incorporated herein.

2

Following the Court's Order, notice was sent to putative class members and approximately 225 drivers opted-in to the case.[2]  *See* ECF Nos. 21, 26, 53, 118, 149, 152, 154, 155, 156, 160, 165, 166, 169, 179, 180, 183, 188, 190, 213, and 215.

Since the conditional certification briefing was completed, the parties have conducted additional discovery, including taking the deposition of Young regarding his claims in this case. Discovery is now closed and a more developed factual record exists.

## II.   LEGAL ARGUMENT

### A. Decertification of an FLSA collective action is appropriate where individualized determinations must be made for each class member.

The FLSA authorizes an employee to pursue claims collectively against an employer "on behalf of himself and other employees similarly situated."  29 U.S.C. § 216(b).  To obtain collective treatment of his claims, Young bears the burden of demonstrating that he and all members of the class he seeks to represent are similarly situated.  *See, e.g., Regan v. City of Charleston*, No.: 2:13-cv-3046-PMD, 2015 U.S. Dist. LEXIS 148712 (D.S.C. Nov. 3, 2015); *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880 (D. Md. 2011).

Courts in the Fourth Circuit utilize a two-tiered approach to determine whether putative class members are similarly situated.  *Cleary v. Tren Servs.*, No. 2:11-cv-00123, 2012 U.S. Dist. LEXIS 49552, at *6-7 (S.D. W. Va. Apr. 9, 2012); *Regan,* 2015 U.S. Dist. LEXIS 148712; *Sharer v. Tandberg, Inc.*, 1:06cv626(JCC), 2007 U.S. Dist. LEXIS 14246 (E.D. Va. Feb. 27, 2007).  During the first "notice" stage, which has already been conducted in this matter, the court applies a "fairly lenient" standard and plaintiffs are "required only to make a preliminary showing based on 'at least a colorable basis for their claim that a class of similarly situated

---

[2] *See* ECF Nos. 21, 26, 53, 118, 149, 152, 154, 155, 156, 160, 165, 166, 169, 179, 180, 183, 188, 190, 213, and 215.

3

plaintiffs exist.'" *Cleary*, 2012 U.S. Dist. LEXIS 49552, at *7; *Sharer*, 2007 U.S. Dist. LEXIS 14246, at *6 (internal citation omitted).

The second stage, however, "is where the rubber meets the road." *Pickering v. Lorillard Tobacco Co., Inc*., No. 2:10-CV-633-WKW [WO], 2012 U.S. Dist. LEXIS 10421, at *20 (M.D. Ala. Jan. 30, 2012). "[A]fter the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, 'a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to the extent that a collective action would be the appropriate vehicle for relief.'" *Regan,* 2015 U.S. Dist. LEXIS 148712, at *10 (internal citations omitted). Because the court has much more information at this second stage, it employs a "heightened, fact specific standard" that is much "stricter" than the standard employed at the first stage. *Cleary*, 2012 U.S. Dist. LEXIS 49552, at *7; *Regan,* 2015 U.S. Dist. LEXIS 148712, at *10; *Sharer*, 2007 U.S. Dist. LEXIS 14246, at *6. During this stage, if plaintiffs cannot satisfy their burden of demonstrating that they are similarly situated to those they seek to represent, the court may decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiffs to proceed only on their individual claims. *Regan*, 2015 U.S. Dist. LEXIS 148712, at *7.

"[T]he similarities necessary to maintain a collective action . . . must extend beyond the mere facts of job duties and pay provisions . . . " *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261-62 (11th Cir. 2008). A collective action can only survive a motion to decertify "where multiple claims can be adjudicated efficiently because they share common underlying facts and *do not require substantial individualized determinations for each class member . . .* "

4

*Purdham v. Fairfax Cnty. Pub. Schs.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009) (emphasis added).

> B. <u>The collective action should be decertified because Young's own testimony refutes the representations upon which his Motion for Conditional Certification was based and affirmatively demonstrates that collective certification is not appropriate.</u>

Young's request for conditional certification was premised upon his contention that he and the other drivers "signed uniform contracts" that created uniform terms and conditions of their relationship with Act Fast such that they were uniformly misclassified as independent contractors. (*See* Plaintiff's Motion for Conditional Certification, ECF No. 31, pp. 7-9.) Young's testimony and the other discovery that has since been conducted, however, indisputably demonstrates that this essential premise is false. *Young admits that a representative of Act Fast told him that "all" of the terms of the independent contractor agreement were "always" negotiable.* (*See, e.g.,* Young Depo. 77[3] (". . . I asked her if the contract was negotiable and, of course, she was, like 'Oh yeah, it's all negotiable.'"); 77-78 ("Q: Laura Hicks told you that the contract is always negotiable, is that right? A: Yes, she did say that.")) And with Act Fast's encouragement, Young actually negotiated modifications to a number of substantive terms of his independent contractor agreement.

For example, paragraph six of the independent contractor agreement relates to Act Fast's right to withhold compensation from the contractor for loss due to delay, shortage, damage, or other losses or damages. (*See* Young Depo. Ex. 5 [4] at ¶6.) Young modified that provision to limit when such an offset may be made, agreeing only to the offset in situations where he, and

---

[3] "Young Depo. __" refers to the relevant pages of testimony which are attached as Exhibit A to the Omnicare Defendants' Motion for Decertification filed contemporaneously herewith.

[4] Young Depo. Ex. 5 is a larger document containing extraneous and confidential personal information bearing no relevance to the Omnicare Defendants' Motion for Decertification. As such, the Omnicare Defendants have included only Young's independent contractor agreement as part of Exhibit A to this Motion. Citations to page and paragraph number of Young Depo. Ex. 5 refer only to that Agreement.

not Act Fast or any other third-party, was at fault. (*See id. See also* Young Depo. 74 ("And that's what I was saying: 'If it's not my fault, I'm not paying for it.'")) In the next paragraph, Young modified the following provision relating to indemnification for any costs or liabilities incurred by Act Fast on account of Young's failure to complete a delivery, agreeing to such indemnification "only under conditions that I can control or are of my own fault." (*See* Young Depo. 76-77; Young Depo. Ex. 5 at ¶7.) Both of these modifications had the potential to directly affect Young's compensation for the services he performed on behalf of Act Fast.

Young negotiated a number of other changes to the independent contractor agreement as well. He changed the choice of law from Ohio to West Virginia—a revision that could significantly alter the parties' rights and obligations under the independent contractor agreement. (*See* Young Depo. 78-79; Young Depo. Ex. 5 at ¶18.) He declined to agree to a provision in the independent contractor agreement stating that it would be considered theft if he did not return Act Fast's scanning equipment within five days after ceasing his contractual relationship with Act Fast, instead writing, "Don't agree. This is Extortion." (*See* Young Depo. Ex. 5 at p. 11.) Indeed, Young even changed one of the most fundamental terms of the independent contractor agreement—modifying the parties to the independent contractor agreement and signing on behalf of "Young Enterprises." (*See id.* at p. 6.)

Because it is undisputed from the factual record in this case that each driver could individually negotiate the terms of his or her independent contractor agreement, the determination of whether each such individual was properly classified as an independent contractor necessarily must be done on an individual, case-by-case basis, reviewing each individual's independent contractor agreement and any modifications made thereto.

To illustrate this point, imagine that another driver also negotiated the terms of his independent contractor agreement. This driver modifies paragraph 1 to provide that Act Fast, rather than the driver, must furnish all equipment necessary to perform the delivery services. He also modifies paragraph 4 regarding the manner and method of compensation, revising the independent contractor agreement to provide an hourly rate rather than a portion of the gross revenue for the deliveries that he completes. He further revises paragraph 8 so that Act Fast, and not the driver, shall determine the means and methods of performance of delivery services under the contract and shall pay for all costs and expenses associated with the operation of the driver's vehicle and other equipment. Finally, he revises paragraphs 10 and 12 to state that Act Fast is responsible for providing appropriate insurance and withholding and remitting any taxes. The analysis of whether this individual was properly classified as an independent contractor is significantly different than the analysis for an individual who made no such changes to the independent contractor agreement.

While this may be an extreme example, it illustrates the fundamental problem with litigating this case on a collective basis: Where putative class members could (and did) individually negotiate the terms of their relationship with Act Fast, determining whether they were properly classified as independent contractors necessarily requires the type of individualized assessment and analysis that is inappropriate for collective treatment. Accordingly, Young has not and cannot satisfy his burden of establishing that he and the Opt-In Plaintiffs are similarly situated, and the collective action must be decertified.

Moreover, Young's testimony directly refutes a number of other representations Court relied upon in granting his request for conditional certification. For instance, in granting Young's Motion for Conditional Certification, the Court referenced the declarations submitted

by Young and a handful of other putative class members in which they asserted that they were required to "purchase a uniform with the Defendants' logo and wear it on every delivery." (Memorandum Opinion and Order, ECF No. 145, p. 6.) Contrary to this assertion, however, Young testified only that he was required to purchase a shirt with the words "Act Fast Delivery" on the sleeve. (Young Depo. 42.) Furthermore, he testified that drivers were not prohibited from performing delivery services if they were not wearing the shirt, and in fact, during the three years that he worked with Act Fast, Young admits that he "rarely" wore the shirt while performing delivery services. (Young Depo. 44-46.)

Likewise, the Court relied on Young's representation that he and the other drivers were given work schedules to which they were required to abide, and were required to be on-call for "stat" runs and to work weekends and holidays. (*See* Memorandum Opinion and Order, ECF No. 145, p. 6.) Young, however, produced a series of text messages reflecting that he routinely declined "stat" runs and other assignments offered to him. (*See* Young Depo. Ex. 9[5].) He confirmed during his deposition that he felt free to turn down assignments, and regularly did so for a variety of reasons. As just a few examples:

- Young declined a "stat" run because he was unavailable at the time. (Young Depo. 143-145; Young Depo. Ex. 9, p. 12);

- Young declined assignments that involved deliveries in areas to which he did not like to drive. (Young Depo. 144-145 (Young explaining that he "didn't like the drive all the way down" to Mingo County, and telling Act Fast "I don't go to Mingo"); Young Depo. Ex. 9, pp. 13-14 ("I dont go to eastbrook either I have a creeper there") [sic]; and Young Depo. 47 ("Hmm I really don't want to go that way so I will pass on that one"));

---

[5] Young Depo. Ex. 9 is a larger document containing Young's text messages with various Act Fast individuals. These other text messages bear no relevance to the Omnicare Defendants' Motion for Decertification. As such, the Omnicare Defendants have included only those text messages that are relevant to this Motion for Decertification as part of Exhibit A to this Motion. Citations to page of Young Depo. Ex. 9 refer only to those text messages.

- Young turned down assignments if they interfered with his plans.  (Young Depo. 147; Young Depo. Ex. 9, p. 20 (when asked to take various assignments, Young responded "No I have plans" and, later, "No I have dinner plans"));

- Young indicated that he would decline an assignment if it was not ready for delivery by a specific time.  (Young Depo. 146, Young Depo. Ex. 9, p. 15 ("I wouldn't mind taking the eldercare [assignment] but if it isn't ready by 8 I'm not taking it."));

- Young also declined assignments without giving any explanation.  (Young Depo. 145-146, Young Depo. Ex. 9, p. 14 (Young writing "I'll pass on that" when dispatch indicated that it had a delivery in Mingo); Young Depo. 146-147, Young Depo. Ex. 9, p. 17 (dispatch asked Young if he wanted to take an assignment in Charleston Gardens and noted "if not [it's] cool I can run it," to which Young responded "[y]eah ill pass" [sic]); Young Depo. 152, Young Depo. Ex. 9, p. 55 (in response to dispatch asking "[c]an you take a Princeton stat," Young responded "No.")).

More generally, Young's implication that the Omnicare Defendants (or anyone else, for that matter) viewed Young and the other drivers as mere employees of Act Fast is further undermined by Young's admission that Julio, whom Young identified as a shipping supervisor or manager for the Omnicare Defendants, told Young how much money Omnicare was paying to Act Fast and *encouraged him to create a company and underbid Act Fast to take over the contract with the Omnicare Defendants*.  (*See* Young Depo. 82-83.)

In short, upon review of the fully-developed factual record, it is clear that Young cannot satisfy his burden of establishing that he and the Opt-In Plaintiffs are similarly situated for purposes of determining whether they were properly classified as independent contractors.  The assertions that formed the foundation for Young's request for collective action certification have been refuted by the undisputed evidence (including, most notably, Young's own testimony). Analyzing the validity of each driver's FLSA claims requires an individualized and fact-specific inquiry that is not compatible with litigating this matter as a collective action.  As such, the collective action must be decertified.

### III. CONCLUSION

For all of the foregoing reasons, the Omnicare Defendants respectfully request that the Court grant their Motion for Decertification, decertify the collective action conditionally certified on August 10, 2017, permit Young to pursue his claims on an individual basis, and dismiss the Opt-In Plaintiffs without prejudice.

Dated: December 13, 2017

Respectfully submitted,

JACKSON LEWIS P.C.

By *s/ Bethany S. Wagner*
Marla N. Presley, Esq.
WV I.D. No. 9771
Marla.presley@jacksonlewis.com
Bethany S. Wagner
WV I.D. No. 11341
Bethany.wagner@jacksonlewis.com
1001 Liberty Ave., Suite 1000
Pittsburgh, Pennsylvania 15222
(412) 232-0404
(412) 232-3441 facsimile

Joseph M. Price, Esq.
WV I.D. No. 2981
jmp@ramlaw.com
David S. Russo, Esq.
WV I.D. No. 5087
dsr@ramlaw.com
W. Bradley Sorrell, Esq.
WV I.D. No. 4991
wbs@ramlaw.com
Robinson & McElwee PLLC
700 Virginia Street East, Suite 400
Charleston, West Virginia 25301

*Counsel for the Omnicare Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that the Omnicare Defendants' Memorandum in Support of Motion for Decertification was served upon all counsel of record via the Court's ECF system.

By *s/ Bethany S. Wagner*
Bethany S. Wagner