# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### BECKLEY DIVISION

ERIC YOUNG, Individually and on behalf )
of all others similarly situated, )
            )      Civil Action No.  5-16-cv-09788
         Plaintiff, )
     v. )
            )
ACT FAST DELIVERY OF WEST )
VIRGINIA, INC., et. al, )
            )
       Defendants. )

## OMNICARE INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR NEW TRIAL

Throughout this case Plaintiffs prevailed on every significant contested motion or objection.  Prior to trial, they were granted summary judgment on the issues of joint employment and independent contractor status.  Plaintiffs were then permitted to identify expert witnesses six months after the Court's clear deadline without ever having sought an extension.[1]  Their expert, who had never previously worked on a wage and hour case, was permitted to present a minimum wage damage calculation that purposely disregarded significant compensation that Plaintiffs received during the relevant workweeks and that was based on seriously flawed methodology.

During the charge conference, Plaintiffs' counsel voiced no objections to the jury instructions, and in fact repeatedly praised them as "excellent."  Those instructions specifically confirmed all of the following:

- The jury could  "disregard" the opinions of expert witnesses "entirely";
- The jury should apply "common sense" and "experience";
- Minimum wage calculations must be based on "all hours worked" by an employee during each workweek; and

---

[1] As a result, though Plaintiffs had been allowed to work with their expert for many months prior to trial, Omnicare was provided only weeks to locate and retain a rebuttal expert, present data to him, and develop a response to Plaintiffs' expert.  Further, Plaintiffs' expert revised his opinion through the issuance of several "affidavits" and amendments, the last of which was submitted to defense counsel less than two weeks prior to trial.

- The IRS rate is optional and need not be applied in computing expenses.

Plaintiffs' counsel also approved the verdict form, which specifically required the jury to first determine whether Omnicare had violated the FLSA before considering any alleged damages. Plaintiffs never moved for judgment as a matter of law on the issue of liability, or any other issue. The jury followed the Court's instructions and promptly determined that Plaintiffs had not satisfied their burden of proving an FLSA violation.

Incredibly, Plaintiffs now ask this Court to overturn that verdict and order a new trial. A jury's verdict, however, should be disturbed only in exceptional circumstances, and a new trial should not be granted based on objections that were waived at trial. Plaintiffs' Motion is based entirely on arguments and objections that they failed to properly preserve at trial and that are inconsistent with the jury instructions based on well-established law. Plaintiffs have not identified any properly-preserved errors upon which to base this extraordinary relief, let alone any errors that were so grievous that they rendered the entire trial fundamentally unfair. In light of the history of the case, it strains credulity for Plaintiffs to now allege that the trial was somehow unfair.

In the end, the jury did exactly what it was charged to do: it weighed the evidence, assessed the credibility of the witnesses, followed the instructions, and ultimately determined that Plaintiffs did not satisfy their burden of proving that Omnicare violated the FLSA. There is no basis to overturn their verdict. Plaintiffs were afforded every advantage and they lost. Plaintiffs' Motion for New Trial should be denied.

## I. The Court should disturb a jury's verdict only on rare and extreme circumstances, and the Court should not overturn a jury verdict based on arguments that were not properly preserved at trial.

The Fourth Circuit permits the granting of a new trial only in three narrow situations: (1) where the verdict is against the clear weight of the evidence; (2) where the verdict is based upon

evidence which is false; or (3) where the verdict will result in a miscarriage of justice, even though there may be substantial evidence that would prevent the direction of verdict. *See Atlas Food Sys. & Servs. v. Crane Nat'l Vendors,* 99 F.3d 587, 594 (4th Cir. 1996); *see also Knox Energy, LLC v. Gasco Drilling, Inc.*, 258 F. Supp. 3d 709, 739 (W.D. Va. 2017) ("The standard for obtaining a new trial is a 'very high standard.'").

Although the decision whether to grant a new trial is within the district court's discretion, courts are cautioned that this discretion should be "exercised sparingly" and only in "extreme circumstances." *See Campbell v. Bos. Sci. Corp.,* 2016 U.S. Dist. Lexis 136669 (S.D. W. Va. Oct. 3, 2016); 12-59 Moore's Federal Practice - Civil § 59.13(2)(a) (2018).   On a Rule 59 motion, "the court may not 'reweigh the evidence and set aside the jury verdict merely because the jury could have redrawn different inferences or conclusions or because judges feel that other results are more reasonable.'"   *Campbell,* 2016 U.S. Dist. Lexis 136669 at * 42.   Ultimately, the "crucial inquiry" is "whether an error occurred in the conduct of the trial that was *so grievous* as to have rendered the trial unfair." *Id.* (emphasis in original); s*ee also* 12-59 Moore's Federal Practice - Civil § 59.13(2)(a) (2018) ("Courts will sustain jury verdicts if reasonable bases exist to uphold the verdict.   In ruling on a Rule 59 motion, the court will search the record for evidence that could reasonably lead the jury to reach its verdict, drawing all reasonable inferences in favor of the verdict winner.").

Significantly, a request for a new trial should be denied "where the moving party has failed to timely object to the alleged impropriety giving rise to the motion." *Dennis v. Gen. Elec. Corp.*, 762 F.2d 365, 367 (4th Cir. 1985); s*ee also Shaw v. Titan Corp.*, 1998 U.S. App. Lexis 10080, at *10 (4th Cir. May 18, 1998) (where the defendant failed to object at the time the inflammatory evidence was initially offered, the district court did not abuse its discretion by denying the Rule 59 motion); 12-59 Moore's Federal Practice - Civil § 59.13 (2018) ("Improper

conduct by counsel during trial or in closing argument may support a motion for new trial….However, the alleged misconduct . . . must ordinarily be objected to at the appropriate time.").  Plaintiffs fail to identify a single Fourth Circuit decision granting a new trial based on an issue that was not the subject of a timely objection.  In fact, in one case relied upon by Plaintiffs, the Fourth Circuit *rejected* the argument that the district court erred by declining to grant a new trial based on an issue the party did not properly preserve an objection.  *See Williams v. Nichols*, 266 F.2d 389, 391 (4th Cir. 1959) (noting that where the defendants made no objection on the record regarding a particular issue, they were "in no position to thus complain at this stage.").

Plaintiffs base their request for a new trial on two arguments, both of which are without merit.  First, Plaintiffs improperly attempt to shift the burden of proof to Omnicare and erroneously assert that the jury was compelled to accept their expert witnesses' testimony regarding the IRS business mileage rate.  However, the burden to prove liability remained with Plaintiffs at all times.  The jury was correctly instructed that it was free to disregard some or all of the expert witnesses' opinions and that the application of the IRS mileage rate was optional. The jury followed these instructions and reasonably determined that Plaintiffs had not satisfied their burden of proving that Omnicare violated the FLSA.  Most importantly, this complaint is meaningless.   Because Plaintiffs failed to prove liability, their arguments regarding the calculation of damages are irrelevant.  Second, Plaintiffs assert that a new trial is necessary to prevent the miscarriage of justice based on references that defense counsel made during closing arguments relating to the jury's use of common sense and experience and consideration of an employee's total compensation when analyzing minimum wage.  However, Plaintiffs failed to properly preserve objections to those comments during trial and, in any event, such comments are consistent with governing law and the consented-to jury instructions.

**II.**     **The Court properly charged the jury that it was Plaintiffs' burden to establish a violation of the FLSA, and Plaintiffs failed to meet that burden.**

The jury was charged with deciding two distinct issues:  (1) whether Plaintiffs met their burden of proving that Omnicare violated the FLSA by not paying them minimum wage for all hours worked; and (2) if so, the amount of damage to award.  By advancing the notion that "[t]here was only one issue to be determined at trial . . . damages," Plaintiffs simply misstate the record. The jury instructions and jury verdict forms (to which Plaintiffs agreed) unequivocally confirm that the jury was first charged with determining whether Omnicare violated the FLSA. *See* ECF No. 305, Jury Instruction No. 8, p. 13-15 ("In this case, Plaintiffs claim that they were not paid the minimum wage and that they were not appropriately paid for the number of hours that they worked over forty hours in a workweek. . . . If you find that the Plaintiffs received less than this minimum amount required by the FLSA, then you must find for the Plaintiffs and against Omnicare.  If, however, you find that the Plaintiffs received at least this minimum amount, then you must find for Omnicare and against the Plaintiffs."); *see also* ECF No. 306, Jury Verdict Form No. 1 ("We, the jury, find by a preponderance of the evidence that the Defendant, Omnicare, violated the Fair Labor Standards Act."  Response: "No."). Indeed, Plaintiffs conceded at trial that liability had not yet been established.  *See, e.g.,* Trial Tr. Vol. III, 412:20-23 ("It is your job as jurors to determine if Omnicare violated the Fair Labor Standards Act, or the FLSA . . .").[2]

---

[2] Plaintiffs' assertion that "Omnicare did not challenge the notion that it had violated the FLSA" is categorically false. Omnicare denied liability repeatedly, and at every stage of trial – including opening statements. *See, e.g.,* Trial Tr. Vol. I 27:1-4 ("Now, remember, there has been no determination whatsoever at this point that there has been any minimum wage violations.  That's your job.  That's what you have to do."); 30:22-23 ("Now, remember there has not been any determination yet that any violation has occurred.  That's up to you."), in its  motion for judgment as a matter of law made at the close of Plaintiffs' case. *See* Trial Tr. Vol. II 288:24-25 ("Even if plaintiffs did prove that Omnicare violated the FLSA, which they did not . . ."), and during closing arguments (*see* Trial Tr. Vol. III 456:10-

Plaintiffs' Motion ignores this first inquiry—whether Omnicare violated the FLSA—and focuses almost exclusively on their arguments regarding the proper method for calculating damages.  As discussed, the jury reasonably assessed the evidence and determined that Plaintiffs had not met their burden of establishing that Omnicare violated the FLSA's minimum wage requirement.  Accordingly, their arguments relating to the calculation of damages are irrelevant and insufficient upon which to grant a new trial.

    a.   <u>The burden remained with Plaintiffs at all times to prove their claims.</u>

Plaintiffs had the burden of first proving to the jury that Omnicare violated the FLSA by failing to pay Plaintiffs minimum wage for all hours worked. Plaintiffs bore the burden of proving this. *See* ECF No. 305, Jury Instruction No. 3, p. 4 ("the burden is on the plaintiff to prove his or her claim by a preponderance of the evidence"); Jury Instruction No. 8, p. 19 ("To establish a minimum wage claim, each Plaintiff must prove by a preponderance of the evidence that Defendants failed to pay him/her the $7.25 per hour minimum wage for all hours worked during one or more workweeks."); *see also Helfand v. W.P.I.P, Inc.*, 165 F. Supp. 3d 392, 399 (D. Md. 2016) ("Of course, the burden rests on Plaintiff to prove each element of his FLSA claim").

Relying on *Anderson v. Mt. Clemens Pottery Co.*, Plaintiffs assert (for the first time) that this burden shifted to Omnicare after Plaintiffs' expert offered her opinion as to one optional method for calculating Plaintiffs' automobile expenses. *See* Plaintiffs' Motion, p. 6.  ***The burden-shifting framework approach advanced by the Mt. Clemens Court, however, does not apply at the liability stage***.  Rather, it applies only to the calculation of damages ***after*** the Plaintiff has already established liability.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S.

---

13 ("So, what I am asking you to do is – based upon the instructions, is to determine that first and foremost that the plaintiffs have not proven their case of a minimum wage violation.")).

680, 687-688 (1946) (an employee must first "prove[] that he has in fact performed work for which he was improperly compensated").  Another Fourth Circuit district court recently held that "it is clear that a plaintiff may not take advantage of the *Mt. Clemens* burden-shifting framework in proving Defendants' FLSA liability," explaining:

> [A] number of courts have concluded that the *Mt. Clemens* burden-shifting framework only provides an evidentiary leg-up to plaintiff-employees at the damages stage in order to prove the amount of damages and that its relaxed burden simply does not apply at the liability stage to prove the existence of damages, i.e., that the plaintiff-employee performed work for which he was not properly compensated.

*Alston v. DirecTV, Inc.*, 254 F. Supp. 3d 765, 786 (D.S.C. 2017).

> Another court similarly rejected the use of *Mt. Clemens* to establish liability:

> ***Again, Plaintiffs put the damages cart before the liability horse.***  *Mt. Clemens* first requires that an employee "prove[] that he has in fact performed work for which he was improperly classified."  Accordingly, while the *Mt. Clemens* approach may offer a classwide basis of proving damages, proving liability in this case first requires individuals to show they performed uncompensated "work" as a result of the Alleged Policy.

*Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 629 (S.D. Cal. 2014) (internal citations omitted) (emphasis added); *see also, Gomez v. Tyson Foods, Inc.*, 295 F.R.D. 397, 400 (D. Neb. 2013) ("The relaxed burden [described in *Mt. Clemens*] applies only to damages, not liability – it does not help plaintiffs show that there was a violation under the FLSA; it only allows them to prove damages by way of estimate, if they had already established liability."); *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 602 (6th Cir. 2009) (explaining that the plaintiff can take advantage of the "relaxed burden" described by *Mt. Clemens* "[t]o determine the extent of damages").  Because Plaintiffs did not satisfy their burden of establishing liability, the *Mt. Clemens* burden-shifting framework was never implicated.

  b. <u>The Court properly charged the jury that it was not required to credit expert testimony or apply the IRS mileage deduction rate.</u>

The Court properly charged the jury that it was not required to credit *any* expert witness' testimony—and in fact was permitted to disregard it entirely. *See* ECF No. 305, Jury Instruction No. 8, p. 11-12; *see also Moultrie v. Harris Lake Inc.*, No. 86-1167,1987 U.S. App. LEXIS 19584 (4th Cir. Jan. 8, 1987) ("[A]s the trial court quite properly instructed the jury, they were free to believe all, part or none of what any witness, including expert, had to say."); *Shrout v. Seifert*, No.2:13-CV-22, 2014 U.S. Dist. LEXIS 108859, \*13 (N.D. W.Va. Aug. 7, 2014) ("Merely because someone is qualified as an expert and offers an opinion does not require the jury to accept that opinion."); *Lone Star Indus. v. Lafarge Corp.*, 882 F. Supp. 482, 494 (D. Md. 1995) ("[T]he jury had the right to reject the expert opinions presented at trial 'even if not directly contradicted.'") (internal citations omitted).  ***Plaintiffs did not object to this instruction***, and cannot now credibly suggest that the jury was required to credit one or both of their expert witnesses' testimony.  It is reasonable that the jury seemingly found Plaintiffs' inexperienced experts unpersuasive.

Henson, for example, admitted that he had never previously testified in a wage and hour case. *See* Trial Tr. Vol. II 225:18-25. He admitted that he made the indefensible decision to disregard the drivers' scan data as unreliable for one aspect of his analysis, only to use it for another aspect. *See id.* at 234:7-12.  The "rules" that he concocted were arbitrary and created impractical, and at times impossible, results. *See, e.g.,* Trial Tr. Vol. III 331:5-11 (Dr. Woods explaining that "what choices and assumptions that Mr. Henson is making when he is analyzing the data are inconsistent with the data as they are recorded, the time-keeping data in particular. He is making certain choices and creating certain groups that don't exists in the data."); *see also* 343:1 – 344:16, 345:10 – 347:3 (Dr. Woods testifying in detail regarding how Henson's "rules" create results that are not supported by the data).  Henson conceded that he never interviewed or sought information from the drivers directly, and purposefully ignored some portions of the

compensation that the drivers received from Act Fast when completing his analysis. *See* Trial Tr. Vol. II 227:6-11, 251:22-24. Based on these (and other) serious flaws in his methodology, it was entirely reasonable for the jury to reject his analysis.

Similarly, Plaintiffs' other expert, Sandra Uy, admitted that she had never testified as an expert witness before, let alone in a wage and hour case. *See* Trial Tr. Vol. II 272:9-12. Although her expert opinion regarding the alleged reasonableness of the IRS business mileage rate was based upon the advice she purportedly gives to her clients, Uy admitted that she does not actually have any clients who employ delivery drivers or other individuals whose primary function is to drive. *See* Trial Tr. Vol. II, 284:3-5. She further conceded that the IRS business mileage rate actually was a tax deduction rather than a reimbursement rate. *See id.* at 274:18-20; 278:22 – 279:1. Critically, she admitted that application of the IRS business mileage rate was *optional* and was but one method to estimate the drivers' automobile expenses. *See id.* at 270:11-13, 278:15-17, 283:13-14. Under these circumstances, the jury could have reasonably determined that the opinions of Plaintiffs' expert witnesses were due little, if any, weight. *See* ECF No. 305, Jury Instruction No. 8, p. 12 ("If you should decide that the opinion of an expert witness is not based upon sufficient evidence and/or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely, or give it such weight as you find it deserves.").

Likewise, the jury was properly instructed that it was not required to use the IRS business mileage rate to calculate Plaintiffs' automobile expenses. *See* ECF No. 305, Jury Instruction No. 8, p. 15 ("The Court instructs you that although you may use the IRS business mileage rate, ***you are not required to use the IRS standard business mileage rate to calculate reasonable reimbursements***.") (emphasis added).) Once again, Plaintiffs did ***not*** object to the inclusion of

this language in the jury instructions.  Plaintiffs' contention now that the jury was required to apply the IRS business mileage rate is both legally and factually inaccurate.

Plaintiffs have not and cannot offer any legal authority holding that an employer is required to use the IRS business mileage rate to reimburse employees for their automobile or other expenses.   This is not the law, and the jury instructions accurately explained to the jury that it could, but was not required, to apply the IRS business mileage rate.  *See* ECF No. 305, Jury Instruction No. 8, p. 15.); *see also* Trial Tr. Vol. 270:11-13, 278:15-17, 283:13-14 (Uy confirming that the application of the IRS business mileage rate was optional). It is telling, of course, that Plaintiffs not only agreed to this instruction, but contrary to their position now that the evidence compelled a jury verdict in their favor, chose *not* to move for judgment as a matter of law on this—or any other—issue at trial.

Furthermore, Plaintiffs' argument that the jury was required to accept Uy's opinion regarding the IRS business mileage rate fails for an additional, independent reason: It is based on the fundamentally faulty premise that Uy's opinion was the only evidence offered regarding reimbursement of expenses.  It was not.  Omnicare's expert witness, Dr. Woods, testified that the Act Fast representatives with whom he spoke informed him that Act Fast had factored a $4.00 per gallon rate (to compensate drivers for their expenses)[3] when setting the rate that would be offered to the driver for a particular route.  *See* Trial Tr. Vol. III 354:1-6.  Although Plaintiffs now suggest that this testimony was inadmissible, ***they did not object to it at trial.*** *See id.*  Nor did they request any type of limiting instruction.  As a result, they did not properly preserve an objection to this testimony and cannot use it as a basis to request a new trial.  *See Dennis*, 762

---

[3] It is uncontroverted that this rate is more than the cost of a gallon of gas at any time during the relevant period and incorporated other automobile expenses.

F.2d at 367 (a request for a new trial should be denied "where the moving party has failed to timely object to the alleged impropriety giving rise to the motion.").

In sum, the jury was correctly instructed that it could give expert witnesses' opinions as much weight as it found that they deserve, and even disregard their opinions entirely.  The jury was also correctly instructed that it could, but was not required to, apply the IRS business mileage rate.  The jury's choice to heed those proper instructions did not give rise to a grievous error requiring a new trial.

      c.   <u>The jury reasonably could have determined that, given the evidence offered by Plaintiffs, they did not satisfy their burden of establishing that they were paid less than minimum wage after reasonable expenses were deducted.</u>

Based on the evidence offered by Plaintiffs, it was entirely reasonable for the jury to decide that Plaintiffs had not met their burden of proving that Omnicare violated the FLSA. Plaintiffs' case relied almost entirely on the opinions offered by its two novice expert witnesses. Assuming that the jury disregarded those opinions (which was within their province to do), a reasonable basis existed for the jury's determination that the scant remaining evidence offered by Plaintiffs did not suffice to prove an FLSA violation.

Plaintiffs offered the testimony of just three drivers—Eric Young, Keith Jenkins, and Justin Kerwood.  Not one of these drivers testified that he was not paid enough to cover his automobile expenses and still net at least minimum wage.  In fact, the evidence confirmed the opposite.  Jenkins, for example, testified that he was involved in an automobile accident in which he totaled his car.  He claimed that the insurance company reimbursed him approximately $5,000 less than he owed on the vehicle. *See* Trial Tr. Vol. II 132:3-13.  Jenkins did not offer evidence of any other automobile-related expenses that he incurred, and it is undisputed that Act Fast paid Jenkins approximately $107,667.48 over a two-year period—far in excess of what was necessary to cover minimum wage for the hours that he worked and the $5,000 in expenses to which he

testified.  *See* Trial Tr. Vol. II 135:5-16.   Similarly, Kerwood confirmed that he performed dispatching duties in addition to his driving duties, and actually earned approximately $10,000 *more* than the amount for which Henson gave him credit. *See* Trial Tr. Vol. II 153:25 – 154:5 (Kerwood testifying that he earned $24,300 during the approximately six or seven months he worked for Act Fast); Trial Tr. Vol. II 173:15-18 (Henson confirming that his analysis only credited Kerwood with $14,321 in compensation). Once his actual compensation was considered, Kerwood earned enough to satisfy the minimum wage *and* cover his automobile expenses, even under Plaintiffs' expert's skewed methodology. *See* Trial Tr. Vol. II 172:22 – 173:5 (Henson testifying that Kerwood should have been paid an additional $5,578 in minimum wage and $2,009 in overtime compensation—for total compensation of $21,908—which is less than the $24,300 that Act Fact actually paid him).

Finally, it is undisputed that before bringing this lawsuit, Young bragged about how much money he earned driving for Act Fast, especially compared to a traditional minimum wage job. *See* Trial Tr. Vol. I 70:17-20 ("I don't know of anything that pays as much has Act Fast . . ."); 72:9-11 (in reference to Act Fast, telling a friend "there is tons of money to be made on the road."); 72:1-22 (lamenting that he had missed out on stat runs earlier that morning and explaining, "I could have made a killing.").   Young offered obvious and absurd embellishments at trial that likely influenced his credibility with the jury. *See, e.g.,* Trial Tr. Vol. I 55:24-25 (testifying that he sometimes worked "24 plus hours" in a day).  He also admitted that he had maintained accurate time and mileage records, but that they were either "lost, thrown away, [or] misplaced" prior to trial.  *See* Trial Tr. Vol. I 66:8-18.   Finally, Young admitted that he performed dispatching duties for Act Fast for which he received additional compensation, and Henson confirmed that that compensation was not included in the analysis.  (*See* Trial Tr. Vol. I

60:12-23; Trial Tr. Vol. II 251:22-24.)  Under these circumstances, it is easy to understand how the jury could have doubted his claims.

Furthermore, but for his outrageous calculations of Plaintiffs' alleged expenses, Henson confirmed  that he was not aware of any Plaintiff who was not paid his regular hours and his overtime hours at minimum wage. *See* Trial Tr. Vol. II 233:1–8.  According to Henson's analysis many of the drivers were owed astronomical amounts - $100,000; even $200,000 or more – for automobile expenses. *See, e.g.,* Trial Tr. Vol. II 281:19 – 283:3; *see also* Pl. Exs. 18, 19. Although Henson walked through examples to demonstrate why his use of google maps and other aspects of his methodology were allegedly accurate to estimate the number of hours that it took the drivers to complete their routes (*see, e.g.,* Trial Tr. Vol. II 195:17 – 209:13), he noticeably did *not* engage in a similar exercise to demonstrate how the application of the IRS business mileage rate was similarly (allegedly) accurate.  In fact, neither Henson, Uy, nor any other witness offered by Plaintiffs ***ever*** testified as to how any driver possibly could have incurred such huge sums in expenses[4].

> d.  Omnicare's expert never testified that there were any minimum wage violations.

To the extent that Plaintiffs allege that Omnicare's expert witness, Dr. Woods, agreed that FLSA violations had occurred, they have mischaracterized his report and testimony.  Dr. Woods never determined that any minimum wage violations had occurred or that any specific amount of money was due to any of the Plaintiffs.  Rather, Dr. Woods merely identified and reversed some of the serious flaws in Plaintiffs' expert's methodology. *See* Trial Tr. Vol. III 330:19-23 ("And I was asked to review an affidavit and a set of data that had been analyzed by

---

[4] *See* Trial Tr. Vol. II 283:4-6 (referencing a driver whom Henson estimated had incurred $203,607 in automobile expenses and asking Uy "can you think of a, how you could possibly spend that amount of money on a car over a four-year period?" to which she responded, "I don't think I can answer that question."). Moreover, Uy conceded that they "[a]bsolutely" could have "sat down and really tried to figure out what it would cost to operate a vehicle" for these drivers – but noticeably chose not to do so. *See* Trial Tr. Vol. II 281:8-13.

Mr. Henson and offer any opinions I might have about his methodology and whether or not the results that he has come to are reliable."); *id.* at 349:12-16 ("Q: Okay.  And then after you did your analysis and you identified those issues that you had problems with [in Henson's report], did you also do an assessment in terms of how much those issues added to Mr. Henson's damages analysis? A: I did.").  He did *not* endorse Plaintiffs' expert's methodology, agree that the application of the IRS business mileage rate was an appropriate method to calculate expenses, or otherwise conduct his own independent analysis to determine whether any driver had been paid less than minimum wage and/or overtime in any relevant workweek. *See id.*

### III.    There was nothing improper in closing arguments that would support a new trial.

Plaintiffs also argue that a new trial is necessary based upon allegedly improper comments made by defense counsel during closing arguments.  However, Plaintiffs' counsel failed to properly preserve these arguments by not timely and properly objecting to them during trial.  In any event, defense counsel's comments were proper and in accordance with both the jury instructions (to which both parties agreed) and established law.

      a.    The jury instructions and counsel for both parties properly asked the jury to apply their common sense and experience.

To the extent that Plaintiffs claim that defense counsel improperly referenced the jurors' use of their "common sense" and "experience" during closing arguments, their argument is without merit.  Plaintiffs' counsel did not object to these references during closing arguments, and therefore cannot rely on this argument as the basis for a new trial. *See generally* Trial Tr. Vol. III, 430:15 – 437:12, 443:13 – 458:3; *see also Dennis*, 762 F.2d at 367.

Even if this argument had been properly preserved, however, it still must fail.  First, contrary to Plaintiffs' suggestion, defense counsel did *not* encourage the jurors to ignore the evidence presented or the jury instructions offered. In fact, counsel specifically implored the jury

to *follow* the Court's instructions: "And I do ask you to focus on the jury instructions that the Judge gave you that – implore you to use that as we go through some of these examples." *See* Trial Tr. Vol. III, 430:24 – 431:1.   Furthermore, defense counsel's comments were entirely consistent with the jury instructions given by the Court – to which the Plaintiffs did not object. *Compare* Trial Tr. Vol. III, 430:21-24 ("And I think one of the points that's kind of bothering me about this case is that I'm worried that maybe common sense and your own experience is being left out of the equation.") *with* ECF No. 305, Jury Instruction No. 4 at p. 6 ("But, in your consideration of the evidence, you are not limited solely to what you see and hear as the witnesses testify.  On the contrary, you are permitted to draw, from the facts which you find have been established and proven, such reasonable inferences and conclusions which reason and common sense lead you to make and as seem justified in light of your own observations and experience in the ordinary affairs of life.").

Plaintiffs have not and cannot claim that the jury instruction was improper, as it is in accord with well-established law.   *See, e.g., Huffington v. Nuth*, 140 F.3d 572, 583 (4th Cir. 1998) (referencing "the degree of common sense imputed to juries every day"); *Johnson v. International Harvester Co.*, 702 F.2d 492, 496 (4th Cir. 1983) (affirming jury verdict and explaining that the jury could have inferred a key fact "using common sense and everyday knowledge"); *United States v. Nesbitt*, 852 F.2d 1502, 1511 (7th Cir. 1988) (holding that jurors are "allowed to draw upon their own experience in life as well as their common sense in reaching their verdict."); *United States v. Huezo*, 546 F.3d 174, 182 (2nd Cir. 2008) ("jurors are entitled, and routinely encouraged, to rely on their common sense and experience in drawing inferences").

Finally, Plaintiffs' argument is belied by the fact that Plaintiffs' counsel made similar remarks during his own closing argument. *See, e.g.,* Trial Tr. Vol. III, 469:4-7 ("What I am really asking you to do is to just use your brains and your honesty . . ."). Under these circumstances,

any references made during closing arguments regarding the jurors' use of "common sense" and "experience" were proper pursuant to both the jury instructions and well-established law.

> b. <u>The jury instructions and Omnicare's counsel properly relayed the law pertaining to how minimum wage should be calculated.</u>

Plaintiffs lastly argue that a new trial is necessary to prevent a miscarriage of justice allegedly caused by defense counsel's statement during closing argument that minimum wage is determined by looking at an employee's total compensation for a workweek. As an initial matter, Plaintiffs failed to preserve this argument by not timely objecting to it at trial. While Plaintiffs did object to this statement during closing arguments, they did *not* object to the actual testimony (from witnesses offered by both parties) on this exact issue. *See, e.g.,* Trial Tr. Vol. II 153:25 – 154:17 (Kerwood); Trial Tr. Vol. II 167:17-20, 251:22-24 (Henson); Trial Tr. Vol. III 356:21 – 363:11 (Dr. Woods). Nor did they object to the jury instruction which encompassed this principle and which did not distinguish between pay for specific duties. *See* ECF No. 8, Jury Instruction No. 8, p. 13 ("An employer must pay at least minimum wage for all hours worked by an employee during each workweek.") and p. 16 ("'Hours worked' means *all time* spent by an employee that was primarily for the benefit of the employer or the employer's business.'") (emphasis added).[5] In fact, Plaintiffs' own counsel conceded this basic premise during his own opening statement:

> To calculate the minimum wage, it's pretty simple if all you have is hours worked and money paid. You take the hours worked and divide it by the number of hours worked, and then you figure that number of hours worked by $7.25. You put that beside what the person was actually paid. If it's more, they were paid the minimum wage. If it's less, they weren't paid the minimum wage.

---

[5] In their Motion, Plaintiffs suggest that Omnicare somehow waived the right to argue at trial that Plaintiffs' expert's report was flawed because it purposefully excluded portions of the compensation that Plaintiffs received by not filing a motion in limine seeking to exclude the report on this basis prior to trial. Tellingly, however, they cite no legal authority supporting that proposition. At trial, Omnicare timely objected to Plaintiffs' expert's testimony before he testified (*see* Trial Tr. Vol. II p. 158:9 – 161:21) and moved for judgment as a matter of law (*see* Trial Tr. Vol. II, 288:9 – 290:5) on this basis, and therefore properly preserved its objection to the expert report.

*See* Trial Tr. Vol. I, 14:22 – 15:3.  Accordingly, Plaintiffs waived any objection relating to this issue and cannot now use it as a basis to seek a new trial.

Even assuming *arguendo* that Plaintiffs had properly preserved this objection, however, Plaintiffs' request for a new trial fails for an even more fundamental reason:  ***the comments that Plaintiffs now challenge accurately state the law***.  In *Blankenship v. Thurston Motor Lines, Inc.*, the Fourth Circuit held that when determining whether minimum wage had been paid, the appropriate consideration is the total amount that the employees were compensated during a workweek for all hours worked during that period, without regard to the specific tasks the employee was performing.[6]  415 F.2d 1193 (4th Cir. 1969).

The employee at issue in *Blankenship* performed two different functions—supervising others and loading activities—for which he received a flat salary each week.  *Id.*  The Fourth Circuit held that the employer complied with the FLSA so long as an employee's ***total compensation*** equaled or exceeded the product of the ***total hours*** the employee worked and the applicable minimum wage rate.  *Id.* at 1198.  Applying these principles, the *Blankenship* court multiplied the total hours worked by the plaintiff (without regard to the duties performed) with the minimum wage rate.  *Id.*  Because it was undisputed that the employee was paid in excess of that amount, the Fourth Circuit held that there had been no FLSA violation.  *Id.*

Furthermore, the Ninth Circuit's recent decision in *Douglas v. Xerox Bus. Servs.*, *LLC*, which relies on *Blankenship*, is directly on point.  875 F.3d 884 (9th Cir. 2017).  In *Douglas,* the plaintiffs were customer service representatives who were paid different rates depending on the task that they performed.  *Id.* at 885.  As a result, the employees were paid less than minimum wage for some hours worked, and more than minimum wage for other hours worked.  *Id.*  They

---

[6] Although the Court declined at trial to grant Omnicare's motion to exclude Plaintiffs' expert based on *Blankenship,* it is nonetheless relevant to the issue that Plaintiffs have now raised in their Motion regarding whether defense counsel's comments regarding consideration of an employee's total compensation created a miscarriage of justice for which a new trial is appropriate.

alleged that their employer violated the FLSA's minimum wage requirement with respect to the hours for which they earned less than minimum wage. *Id.* at 885-886. The employer, however, argued that its pay plan complied with the FLSA because when the employees' total compensation for all hours worked during the workweek was considered, the employees were always paid at or above minimum wage. *Id.* The Ninth Circuit agreed with the employer, holding that the workweek (and not any specific hour within it) was the appropriate unit of measure. *Id.* at 886-890. Accordingly, because the total amount of compensation earned by the employees for all work performed during the work week was equal to or greater than the total number of hours worked multiplied by the applicable minimum wage rate, the employer's pay plan complied with the FLSA and there was no minimum wage violation. *Id.* at 890. The argument made by Plaintiffs at trial and in their Motion is the same as the argument advanced by the *Douglas* plaintiffs—and rejected by the Ninth Circuit. *See also Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353 (8th Cir. 1985) (holding that the plaintiff had not proven a minimum wage violation of the FLSA because the plaintiff's total compensation for all hours worked (driving and non-driving tasks) exceeded minimum wage).

District courts within the Fourth Circuit have long followed *Blankenship* and rejected the very argument advanced by Plaintiffs. In *Avery v. Chariots for Hire*, for example, the plaintiffs alleged that they were paid for driving tasks and but were not paid for some non-driving tasks, such as cleaning and inspecting vehicles. 748 F. Supp. 2d 492 (D. Md. 2010). Thus, they alleged that their employer had violated the FLSA's minimum wage requirement for those hours in which they were not paid at all. *Id.* at 495. The district court dismissed their FLSA claims, holding that the plaintiffs had failed to state a claim for minimum wage violations where they alleged only that their employer failed to pay them for certain hours worked, but did not allege that their employer failed to pay minimum wage "for each of the total number of hours they

worked." *Id.* at 501 ("The FLSA does not guarantee that employees are paid for every hour of work and does not allow for employees to recover more than the statutory minimum wage."). *See also Hill v. B. Frank Joy, LLC*, No. TDC-15-1120, 2016 U.S. Dist. LEXIS 104528 (D. Md. Aug. 9, 2016) (granting summary judgment to the employer because the employee's total compensation was greater than the total number of hours the employee worked multiplied by minimum wage); *Tall v. MV Transp.*, 2014 U.S. Dist. LEXIS 146492 (D. Md. Oct. 14, 2014) (dismissing plaintiff's FLSA minimum wage claim where, for each workweek, the plaintiff's total gross compensation divided by the total hours worked (including hours plaintiff alleges were 'off the clock' and unpaid) exceeded minimum wage).

The Department of Labor has expressly endorsed the proposition that total compensation must be considered when evaluating minimum wage, without regard to whether the employee is performing the same or different tasks during the workweek:

> In non-overtime workweeks or in workweeks in which the overtime provisions do not apply, ***an employee subject to section 6 of the FLSA is considered to be paid in compliance if the overall earnings for the workweek equal or exceed the amount due at the applicable minimum wage***. This is true regardless of whether the employee is paid on the basis of a single hourly rate, different hourly rates, commissions, certain bonuses, or some combination of these methods. ***In other words, if the employee's total earnings for the workweek (including certain bonuses such as a production bonus, see FOH30b07) divided by compensable ours equals or exceeds the applicable minimum wage, the employee has been paid in compliance with section 6***. These principles will also apply where an employee is not compensated for time which is compensable under the FLSA. For example, if an employee subject to the $3.35 minimum wage during a workweek is paid for 32 hours at $5.50 per hour and is paid at a lesser rate or nothing at all for 8 or fewer additional hours worked, this individual is considered to have been paid in compliance with section 6.

DEPARTMENT OF LABOR FIELD OPERATIONS HANDBOOK, Chapter 30b02 (emphasis added).

Against this backdrop, it is particularly telling that Plaintiffs have never been able to produce any contrary authority to support their position that the compensation earned by Plaintiffs for dispatching or any other tasks should not be included in the minimum wage

analysis. *See* Trial Tr. Vol. III p. 391:4-5 ("And I'll be glad to show you the research that we've done on it . . .").[7]  Omnicare's position on this issue is in accordance with well-established and binding law.  Therefore, any references to this issue, in closing or at any other point during the trial, were proper and provide no grounds for a new trial.

## IV.    Conclusion

For all of the foregoing reasons, Omnicare, Inc. respectfully request that the Court deny Plaintiffs' Motion for New Trial.

Dated:   <u>April 5, 2018</u>                              Respectfully submitted,


By <u>*s/ Joseph M. Price*</u>
Joseph M. Price, Esq. WV I.D. No. 2981
jmp@ramlaw.com
David S. Russo, Esq. WV I.D. No. 5087
dsr@ramlaw.com
Robinson & McElwee PLLC
700 Virginia Street East, Suite 400
Charleston, West Virginia  25301

Marla N. Presley, Esq. WV I.D. No. 9771
Marla.presley@jacksonlewis.com
Jackson Lewis PC
1001 Liberty Ave., Suite 1000
Pittsburgh, Pennsylvania  15222

David K. Montgomery, Esq. (*pro hac vice*)
David.montgomery@jacksonlewis.com
Jackson Lewis PC
PNC Center
201 E. Fifth Street, 26th Floor
Cincinnati, Ohio 45202

*Counsel for Omnicare, Inc.*

---

[7] Although he had access to the data, Plaintiffs' expert admitted that, at the direction of counsel, he did not include the compensation received by Plaintiffs for dispatching duties. *See* Trial Tr. Vol. II 169:11-14, 169:24 – 170:4. Furthermore, to the extent that Plaintiffs later attempt to argue that including the dispatching-related compensation is "apples and oranges" because their expert did not also include in his analysis the hours Plaintiffs spent performing those tasks, any such argument is without merit. It was the choice of Plaintiffs and their expert to do so, and they must now live with the consequences of that choice.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

| | | |
|---|---|---|
| ERIC YOUNG, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.  5-16-cv-09788 |
| v. | ) ) | |
| ACT FAST DELIVERY OF WEST VIRGINIA, INC., et. al, | ) ) ) | |
| Defendants. | ) ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing *Omincare Inc.'s Memorandum in Opposition to Plaintiffs' Motion for New Trial* was served on April 5, 2018, upon all counsel of record via the CM/ECF system, which will send notification of such filing to counsel specified below:

> Thomas R. Goodwin
> Susan C. Wittemeier
> Richard David Owen
> Lucas R. White
> Goodwin & Goodwin
> 300 Summers Street, Suite 1500
> Charleston, WV 25301
> *Counsel for Plaintiffs*

> By *s/ Joseph M. Price*
> Joseph M. Price