IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**ERIC YOUNG, Individually
and on behalf of all others
similarly situated,**
     *Plaintiff,*

*v.*              Civil Action No.: 5:16-cv-09788

**OMNICARE, INC.; et al.,**
     *Defendants.*

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFFS' MOTION FOR RELIEF FROM JUDGMENT

  **Less than three weeks ago, a troubling new development occurred that raises grave questions about Defendant Omnicare's candor and conduct throughout this case.** At every stage of this litigation, including trial, Omnicare directly represented to this Court and to Plaintiffs that Omnicare possessed **no information** regarding the most critical details of the Plaintiff Drivers' pharmaceutical deliveries. Plaintiffs have only now learned that Omnicare's representations were **false—demonstrably so**. At the beginning of March—in virtually identical litigation in Kentucky, but represented by new counsel—**Omnicare produced the exact information it repeatedly denied possessing throughout this case**.

  This revelation dishonors everything about this litigation. Omnicare's concealment of this information was no harmless error. This undisclosed information was determinative evidence about whether Omnicare underpaid Plaintiffs under the FLSA. Omnicare's misconduct infected every stage of Plaintiffs' case preparation and presentation, and far exceeds the threshold to set aside the judgment under Rule 60. Fed. R. Civ. P. 60(b)(3). Justice and fairness demand that this contaminated judgment be set aside.

I. **Statement of Facts**

**A. Throughout this case, Omnicare repeatedly represented that it had neither possession of nor access to critical details about the deliveries made by the Plaintiff Drivers.**

During this case, Omnicare's lawyers made the following representations to this Court, to the jury, and to Plaintiffs' counsel that have only now been revealed to be **completely false**:

At the pretrial conference on January 11, 2018, Omnicare audaciously refused to stipulate to the authenticity of the delivery information that Plaintiffs had managed to scrape together from other sources—all while actively concealing its own possession of the very information that it decried as inauthentic. Pre-Trial Confr. Tr. 9–10, 20, Jan. 11, 2018, ECF No. 346. At that conference, Omnicare's attorney directly represented to the Court:

> I don't disagree that there was a significant challenge in getting the information from Act Fast. And ultimately plaintiffs had to serve separate subpoenas to get that information. Omnicare was in no different situation than plaintiffs. **We don't have the information. We don't control the information. We didn't have access to the information**.

*See id.* at 22 (emphasis added). These statements by Omnicare were false.

This active concealment continued through trial. In Omnicare's opening statement to the jury, Omnicare's attorney specifically argued that:

> **[T]his case is entirely based—the allegation against Omnicare is entirely based upon information that Omnicare didn't have and theories that were just invented just a few months ago by [Plaintiffs' expert]**.

*See* Trial Tr. vol. 1, 32, Feb. 26, 2018, ECF No. 329 (emphasis added). Throughout the trial, Omnicare then relied on this exact argument when attacking the credibility of Plaintiffs' expert—a critical campaign in the overall struggle that this Court has already recognized may have been determinative of the outcome. *See* Mem. Op. and Order, at 7–8, ECF No. 338 (denying Plaintiffs' motion for new trial in part because "[g]iven the evidence presented at trial and the Court's

instruction, a reasonable juror could have determined that the Plaintiffs' expert testimony was less credible than that of Omnicare's expert and therefore found in favor of Omnicare.").

And these overt and material misrepresentations were not limited to the final, most acutely prejudicial phases of this case. They began during discovery and affected every stage of Plaintiffs' case development and preparation. On September 11, 2017, after fighting with Act Fast for months to obtain any delivery information and after obtaining sanctions against Act Fast from Judge Aboulhosn, Plaintiffs requested a 30(b)(6) deposition of an Omnicare corporate representative to testify about a variety of delivery information and data. *See* Ex. A, E-mail from Susan C. Wittemeier, Goodwin & Goodwin, LLP to Bethany S. Wagner, Jackson Lewis P.C. (Sept. 11, 2017 2:25 PM EST). One of Omnicare's lawyers, who had been party to all of Plaintiffs' exhausting efforts to obtain this information from Act Fast, responded in writing that Omnicare lacked such information:

> Omnicare objects to producing a representative to testify on the identified topics to the extent they seek information outside of Omnicare's direct and independent knowledge. **The majority of the topics that you identified seeks information of which Omnicare has no knowledge**. **For example, Omnicare has no knowledge of the number of nurse's stations or other points of delivery for medication for each facility on a route. Additionally, Omnicare has no knowledge of the timing and mileage of any given route.**

Ex. A, E-mail from Bethany S. Wagner, Jackson Lewis P.C. to Susan C. Wittemeier, Goodwin & Goodwin, LLP (Oct. 4, 2017 3:30 PM EST) (emphasis added). In direct reliance on this representation that Omnicare lacked the requested information, Plaintiffs' counsel canceled the deposition, writing:

> Thank you for your response concerning a 30(b)(6) deposition of Omnicare regarding the topics set forth in my September 11 e-mail. **Based on your representations that Omnicare has no direct knowledge regarding the majority of topics, and that Omnicare would have to rely on Google maps to provide the requested information, I will forego seeking to schedule these depositions**. If circumstances change, we reserve the right to revisit this matter.

3

Ex. A, E-mail from Susan C. Wittemeier, Goodwin & Goodwin, LLP to Bethany S. Wagner, Jackson Lewis P.C. (Oct. 6, 2017 10:38 AM EST) (emphasis added). This cancellation illustrates one of the many ways in which Omnicare's misrepresentations deeply affected Plaintiffs' case preparation beginning in the discovery process.

A few weeks later, on October 24, 2017, at yet another hearing with Judge Aboulhosn for additional sanctions against Act Fast, Plaintiffs specifically requested that Omnicare be required to produce the exact delivery data that was being sought (yet again) from Act Fast. On behalf of Omnicare, its lawyer then represented directly to the Court: "That is fine; **Omnicare does not have access to that data, the only information we had had been disclosed**[.]" *See* Mot. Hr'g Tr. 4, Oct. 24, 2017, ECF No. 176 (emphasis added). Each of these statements was a false denial.

The misrepresentations quoted above are ones clearly defined in the written record. Omnicare made the same or similar misrepresentations in unrecorded phone calls and conferences, and by implication during witness examinations and arguments (as set forth below).

All of these statements by Omnicare through its lawyers were entirely false, as Plaintiffs have now learned only 20 days ago.

**B. In the Kentucky litigation, Omnicare has now produced the exact delivery information that it denied having in this case.**

Plaintiffs' counsel represents Daniel Davis, a former driver for Act Fast Delivery of Kentucky, Inc. Mr. Davis has filed claims on behalf of himself and other plaintiffs similarly situated against Omnicare, Inc. and three subsidiary companies for violations of the FLSA and the Kentucky Wage and Hour Act in the United States District Court for the Eastern District of Kentucky. *See Davis v. Omnicare, Inc. et al.*, Case No. 5:18-cv-142-REW (E.D. Ky.). Omnicare is represented by a new law firm and a new group of lawyers in the Kentucky case.

Less than a month ago, during discovery in the Kentucky case, Omnicare produced in electronic format Advanced Shipping Notice/Proof of Delivery Reports ("ASN-POD Reports") for all Kentucky drivers for the period February 19, 2013 through March 25, 2018. **The ASN-POD Reports are replete with the exact delivery information that Omnicare disavowed having in this litigation in West Virginia.** The ASN-POD Reports identify the deliveries made by the drivers each day. The ASN-POD Reports identify the facility to which the medications were delivered, the driver identification number and first name of the driver, the signature of the nurse(s) who signed for the delivery, the scan time of pickup, the scan time of the delivery and whether the delivery was on a route or a stat.[1] In addition, the ASN-POD Reports further identify whether a given "stat run" was a stand-alone stat or was delivered on a route. **All of this various delivery information and data is precisely what Plaintiffs repeatedly asked for from Defendants—and what Omnicare repeatedly said it didn't have—in this case.** *See*, *e.g.*, Ex. A, E-mail from Susan C. Wittemeier, Goodwin & Goodwin, LLP to Bethany S. Wagner, Jackson Lewis P.C. (Sept. 11, 2017 2:25 PM EST) (listing topics on which Plaintiffs requested 30(b)(6) testimony from Omnicare about delivery information). **And the ASN-POD reports contain at least one piece of highly material evidence that Plaintiffs were unable to obtain from third parties and were therefore unable to present at trial regarding an assumption made by Plaintiffs' expert that was a focal point of Omnicare's defense.**

Incredibly, Plaintiffs *specifically asked for* "ASN Reports" during discovery in this case. *See generally* Ex. B, Defs. Home Care Pharmacy, LLC, Compass Health Services, LLC, and Omnicare, Inc.'s Resp. and Obj. to Pl.'s Second Set of Disc. Req. Did Omnicare produce the

---

[1] "A stat request is for a medication that falls outside of a routine run." Trial Tr. vol. 3, 304, Feb. 28, 2018, ECF No. 331 (C. Lockhard Trial Testimony).

reports, in a timely manner, as it did just now in Kentucky? No. Instead, Omnicare refused, stating:

> The Omnicare Defendants object to Request No. 10 on the basis that it is unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence and seeks information that contains personal identifiable medical information. An ASN is generated for every medication manifest received by the Omnicare Defendants. Thus, there would be hundreds of thousands of manifests during this timeframe. Furthermore, the manifest includes prescription information, including patients' names. There is no communication of any kind made to Act Fast couriers in the ASN.

*Id.* at 6. At the time this request was made, early in this case and before Omnicare's many misrepresentations, Plaintiffs' counsel had only become aware of the existence of something called an "ASN" report from one of their clients and lacked specific knowledge or detail about what it might contain. Further, Omnicare's blanket, misleading objections—calling the ASN reports irrelevant and portraying them as primarily containing unrelated prescription information—only served to obfuscate and conceal the true scope of the delivery information that Plaintiffs' counsel now knows was held by Omnicare all along. Omnicare then continued its campaign of obfuscation and concealment via ceaseless misrepresentations that occurred through trial and beyond.

## II. Legal Standard

Rule 60 provides, in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . fraud . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).

As this Court has previously recognized, "Rule 60(b)(3) does not address the 'merits of a judgment or order,' but rather 'focuses on the unfair means by which a judgment or order is procured.'" *Daugherty v. Ocwen Loan Servicing, LLC*, No. 5:14-cv-24506, 2016 U.S. Dist. LEXIS 159582, at *4 (S.D.W. Va. 2016) (quoting *Barlow v. Colgate Palmolive Co.*, 772 F.3d 1001, 1010 (4th Cir. 2014)). A three-part test governs this inquiry:

6

> The Fourth Circuit has set forth three factors that a moving party must show to prevail on a motion under Rule 60(b)(3): "(1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the party from fully presenting its case."

*Id.* (quoting *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994)). This Court has also noted its own "inherent power" to correct misconduct "where a party 'deceives a court' or 'abuses the process at a level that is utterly inconsistent with the orderly administration of justice[.]'" *Id.* (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)).

### III. Argument

#### A. Omnicare has engaged in fraud, misrepresentation, or misconduct under Rule 60(b)(3), and Omnicare's misconduct prevented Plaintiffs from fully presenting their case.

This unfortunate and rather stunning situation easily satisfies all three prongs for setting aside the judgment under Rule 60(b)(3).

First, Plaintiffs have a "meritorious" set of claims. As the Fourth Circuit has observed, this factor is satisfied if the merits of a claim are even a "close question," and "new evidence does not have to be result altering to warrant a new trial on a Rule 60(b)(3) motion." *Schultz v. Butcher*, 24 F.3d 626, 630–31 (4th Cir. 1994). Similarly, Moore's Federal Practice summarizes federal law on this factor as follows:

> The not-infrequent assertion that the moving party must have a "meritorious" claim or defense does not contradict what has just been said that proof of a likely different result is not required. A "meritorious" claim or defense, in this context, means only a claim or defense with some legal validity, one that, if the trier of fact believed the moving party, would entitle that party to judgment.

12 James Wm. Moore et al., Moore's Federal Practice – Civil § 60.43(d) (citations omitted); *see also Miller v. Pilgrim's Pride Corp.*, No. 5:05-cv-00064, 2008 U.S. Dist. LEXIS 3305, at *6 (W.D. Va. 2008) ("Under this rule, there is no requirement that the moving party demonstrate that the

7

results would have been different absent the misconduct." (citing *Schultz*, 24 F.3d at 631)). This factor is satisfied as a matter of law. The Court has already found that Plaintiffs' claims were "meritorious" as defined above. During trial, the Court denied Omnicare's Rule 50 motion, stating:

> I find that there is evidence in the record from which a reasonable jury could, in fact, find a violation of the FLSA. And I further find that there is evidence in the record, should the jury decide to adopt it, to support a finding of willfulness under proper instructions from the Court.

Trial Tr. vol. 3, 379, Feb. 28, 2018, ECF No. 331. These findings confirm the existence of meritorious claims. *See, e.g.*, *Ebersole v. Kline-Perry*, 292 F.R.D. 316, 322 (E.D. Va. 2013) ("To establish the existence of a meritorious [claim], a party must present or proffer 'evidence, which, if believed, would permit either the Court or the jury to find for the moving party.'" (quoting *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982))).

The second 60(b)(3) factor—proof of "misconduct by clear and convincing evidence"—is also satisfied as a matter of law. The Fourth Circuit, as well as other district courts in this circuit, have repeatedly stated that wrongfully withholding discovery—much less overtly misrepresenting the existence of and concealing one's possession of such information all the way through trial and beyond—squarely establishes actionable misconduct under Rule 60(b)(3). This is true whether the misconduct is intentional or unintentional. As the Fourth Circuit held in *Schultz*, a case in which the plaintiff wrongfully withheld material evidence in the form of an incident report from the defendant:

> [T]he failure to produce such an important report which contained information helpful to an adversary's position is not easily excused. **We hold that an adverse party's failure, either inadvertent or intentional, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)**.

8

24 F.3d at 630 (emphasis added); *see also Richardson v. Boddie-Noell Enters.*, 78 F. App'x 883, 889 (4th Cir. 2003) (per curiam) ("[W]e have granted Rule 60(b)(3) motions in cases in which one party failed to produce evidence essential to an adversary's position."); *Camastro v. W. Va. Alcohol Beverage Control Comm'n*, No. 5:14-cv-67, 2015 U.S. Dist. LEXIS 168538, at *12-13 (N.D.W. Va. 2015) ("Examples of such conduct [satisfying Rule 60(b)(3)] may include failing to disclose or produce evidence requested in discovery."); *Ebersole*, 292 F.R.D. at 322 ("[T]he Court finds that Defendant has proven misconduct, fraud, or misrepresentation by clear and convincing evidence in light of the three newly obtained videos and their content . . . an adverse party's failure, either inadvertent or intentional, to disclose or produce pertinent requested discovery material constitutes misconduct under Rule 60(b)(3)."); *Battle v. United States*, No. 2:13-cv-298, 2013 U.S. Dist. LEXIS 157769, at *9 (E.D. Va. 2013) ("The Fourth Circuit . . . has found [the Rule 60(b)(3)] standard met when a party failed to produce evidence essential to an adversary's position.").

There is no question that Omnicare's actions qualify as misconduct, misrepresentation or fraud under Rule 60(b)(3). Omnicare repeatedly asserted to this Court, the jury, and Plaintiffs' counsel that it did not possess and had no access to the key delivery information in this case. It made these representations from discovery through trial and beyond. And then a few short weeks ago, it suddenly produced in a separate action a complete set of the exact information that it previously disclaimed having. This behavior is, at a bare minimum, "misconduct" under prong two.

Under the third and final prong, Plaintiffs must show that Omnicare's misconduct "prevented [Plaintiffs] from fully presenting [their] case." *Schultz*, 24 F.3d at 630. Under this factor, there is a critical threshold point that bears repeating: the delivery information that was withheld, concealed, and disclaimed by Omnicare is the most critical evidence in this entire case.

9

This is the only information from which proof of liability and damages in this FLSA wage case could be generated.

And there is a fundamentally prejudicial difference between receiving this information directly from Omnicare and cobbling it together from other sources as Plaintiffs were forced to do. Direct receipt from Omnicare would have intrinsically proven the information's authenticity and would have squarely implicated Omnicare in this entire scheme by showing that Omnicare had firsthand knowledge of the manner in which these drivers were being exploited. Without question this would have strengthened Plaintiffs' case. Instead, however, Plaintiffs had to patch together incomplete delivery information through subpoenas, which opened the door for Omnicare to question the information's authenticity and reliability and for Omnicare to falsely distance itself from the driver exploitation at issue. *See, e.g.*, Trial Tr. vol. 1, 32, Feb. 26, 2018, ECF No. 329 (Omnicare telling jury that "this case is entirely based—the allegation against Omnicare is entirely based upon information that Omnicare didn't have and theories that were just invented just a few months ago by [Plaintiffs' expert].").

On a more molecular level, Omnicare's concealment of this evidence wreaked havoc on Plaintiffs' ability to extrapolate proof of liability and damages from driver delivery information. The ASN-POD reports that were concealed by Omnicare distinguish between stand-alone "stat runs" and stat runs that were part of a formal route. Plaintiffs never had this information in this case. Because Plaintiffs could not obtain it, their expert was forced to rely on certain assumptions, including a "two-hour rule" to try to differentiate between different kinds of stat runs. The ASN-POD reports would have eliminated the need for such assumptions, and Plaintiffs' claims could have instead been based on direct evidence received from Omnicare.

Omnicare relentlessly attacked Plaintiffs' expert on these issues at every stage of this case. On December 1, 2017, Omnicare filed motions *in limine* that argued: "Because the data [used by Plaintiffs] is so unreliable that it cannot be authenticated, a jury should not be permitted to see it, and any references to it should be excluded at trial." Omnicare Defs.' Mem. in Supp. of Mot. in *Limine* to Exclude Data Purported to be from the Xcelerator Courier Mgmt. Software, at 2, ECF No. 227. Omnicare had this data—and more—at the very time it made this argument to this Court. As noted above, at the pretrial conference Omnicare then refused to stipulate to the authenticity of Plaintiffs' delivery evidence and argued that it should be excluded. At that time, Omnicare represented to this Court: "We don't have the information. We don't control the information. We didn't have access to the information." Pre-Trial Confr. Tr. 22, Jan. 11, 2018, ECF No. 346. Again, these statements were wholly untrue at the time they were made.

At trial a few weeks later, the chorus line of Omnicare's defense was criticizing the assumptions used by Plaintiffs' expert, which Omnicare's lawyers derisively referred to as "Henson's rules." In opening argument, Omnicare falsely claimed that Plaintiffs' entire case was invented from whole cloth based on information Omnicare never possessed. Trial Tr. vol. 1, 32, Feb. 26, 2018, ECF No. 329. Omnicare further argued that Plaintiffs' expert's assumptions had a single nefarious purpose:

> **[Plaintiffs] rely almost exclusively on Mr. Henson, the expert that they hired**. . . . What does Mr. Henson do? Well, initially he gathers some information. Again, **it was information that was unavailable as you heard earlier.** He got some information from Act Fast, right information, driving times. He looked at that information. And then what he does—**and he, he invents some rules. And you'll hear a number of—let's call them Henson's rules. . . . And I submit to you, and I believe the evidence will show, that every single rule is designed to increase the amount of mileage of the drivers and the hours spent on the road and, thus, inflating the amount of money they're claiming here today in this case.**

11

*Id.* at 26–27 (emphasis added). Indeed, Omnicare's entire opening argument was spent attacking Plaintiffs' expert and denigrating his "rules" and assumptions—which would have been more limited in scope if Omnicare had not hidden the delivery information that it possessed all along. *Id.* at 25–33.

Later in the trial, Omnicare again questioned the authenticity of Plaintiffs' evidence, and even moved to exclude Plaintiffs' expert's testimony on that basis. Trial Tr. vol. 2, 158, Feb. 27, 2018, ECF No. 330 ("[D]ata that was used that has not been authenticated . . . [t]hat's from a third party and there's been no authentication for it."). These lines of attack were hammered again throughout the cross examination of Plaintiffs' expert, in which Omnicare repeatedly attacked both his assumptions and the sources of information on which he relied. Eric Henson Trial Test. Tr. 72–100, Feb. 27, 2018, ECF No. 328. Omnicare's expert also took a turn attacking Plaintiffs' expert's analysis of the purportedly incomplete delivery information and attendant assumptions. Trial Tr. vol. 3, 336–41, 350–51, Feb. 28, 2018, ECF No. 331.

Omnicare then speciously attacked Plaintiffs' expert throughout its closing argument. At one point Omnicare specifically reiterated the exact false points that are at issue in this motion:

> [T]here is no way in the world that anybody at Omnicare could know that there was a minimum wage violation. Nobody really even knew how that was being computed until the expert was hired, did his report, which was probably weeks ago. It was—the last one actually was in January of how he did all these computations. **Omnicare didn't have the information, couldn't have done it, and had no reason to know that there was any type of that claim of a violation going on.** Okay?

*Id.* at 450 (emphasis added). All of these attacks depended on the false premise that Omnicare never possessed the delivery information that it has now produced in Kentucky.

But it doesn't even end there. This charade then continued, uninterrupted, after the trial. Omnicare specifically opposed Plaintiffs' motion for a new trial on the purported grounds that

12

Plaintiffs' expert made assumptions out of thin air that were not in "the data"—**but *were* in the "data" that Omnicare wrongfully secreted this entire time:**

> The "rules" that [Plaintiffs' expert] concocted were arbitrary and created impractical, and at times impossible, results. [Omnicare's expert] explain[ed] that "what choices and assumptions that [Plaintiffs' expert] is making when he is analyzing the data are inconsistent with the data as they are recorded, the time-keeping data in particular. He is making certain choices and creating certain groups that don't exist in the data." [Omnicare's expert] testif[ied] in detail regarding how [Plaintiffs' expert's] "rules" create results that are no supported by the data. . . . **Based on these (and other) serious flaws in his methodology, it was entirely reasonable for the jury to reject his analysis**.

Omnicare, Inc.'s Mem. in Opp'n to Plfs.' Mot. for New Trial, at 8–9, ECF No. 336 (emphasis added) (citations omitted). This argument to the Court was specious—at the time it was made, Omnicare possessed factual information that would have filled in certain gaps and eliminated the need for some of the expert's "rules" that Omnicare so obsessively mocked. And this specious argument **directly misled this Court**, which understandably accepted it at the time and cited it as a reason for denying Plaintiffs' motion for a new trial. Mem. Op. and Order, at 7–8, ECF No. 338 ("Given the evidence presented at trial and the Court's instruction, a reasonable juror could have determined that the Plaintiffs' expert testimony was less credible than that of Omnicare's expert and therefore found in favor of Omnicare.").

In short, Omnicare built its defense around the very holes in Plaintiffs' evidence that Omnicare's misconduct created. It is impossible to conclude that Plaintiffs were able to "fully present their case" in the face of Omnicare's concealment and disownment of this material evidence. Had this evidence been produced by Omnicare instead of hidden, Plaintiffs' expert would have only needed a single report, not four; he would not have needed to make and use all of the "rules" that Omnicare relentlessly and speciously attacked; Omnicare would not have been able to untruthfully pretend that its hands were clean and it knew nothing about the exploitative

13

delivery circumstances of which Plaintiffs complained; and Omnicare would not have been able to falsely suggest that Plaintiffs' evidence was derived from dubious and inauthentic sources. Plaintiffs' ability to cross examine Omnicare's witnesses also would have been fundamentally different and greatly enhanced. The discovery and case-building process would have unfolded differently as well—for example, Plaintiffs would have conducted the 30(b)(6) deposition that was canceled in direct reliance on Omnicare's misrepresentations. Like the other Rule 60(b)(3) factors, these circumstances satisfy the third prong of the test as a matter of law. *See Schultz*, 24 F.3d at 631 ("When wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict, the aggrieved party should not be required to assemble a further showing." (quotations omitted)); *Ebersole*, 292 F.R.D. at 322–23 ("[T]he Court concludes that Plaintiff's misconduct prevented Defendant from fully presenting her case at trial . . . [it] denied Defendant access to evidence that could well have been probative on an important issue, and closed off a potentially fruitful avenue of direct or cross examination." (quotation marks and citations omitted)).

"[T]he Fourth Circuit has made clear that the new evidence which was withheld by misconduct 'does not have to be result altering to warrant a new trial on a Rule 60(b)(3) motion' as this subsection 'focuses not on erroneous judgments as such, but on judgments which were unfairly procured.'" *Ebersole*, 292 F.R.D. at 322–23 (quoting *Schultz*, 24 F.3d at 631). At an absolute minimum, receipt of this more complete delivery evidence directly from Omnicare would have helped Plaintiffs "bolster" their claims, which the Fourth Circuit has held to be sufficient to satisfy the third prong of the Rule 60(b)(3) test. *See Schultz*, 24 F.3d at 630 ("Third, the Coast Guard report would have helped Spirit Cruises bolster its defense because the report implicated Maass and exonerated *The Spirit of Mount Vernon*.").

**B. This motion is timely under Rule 60.**

In part, Rule 60 provides that "[a] motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The Fourth Circuit has unequivocally and repeatedly held that this provision is not a jurisdictional bar and is instead subject to equitable tolling doctrines and the discretion of the Court. *See United States v. McCrae*, 793 F.3d 392, 401 (4th Cir. 2015) (holding that "the Rule 60(b) one-year filing deadline is an affirmative defense" that is subject to "the application of equitable tolling" or other arguments that such claims "are not time-barred" (quotations omitted)); *United States v. Williams*, No. 18-6797, 2019 U.S. App. LEXIS 4892, at *4 (4th Cir. 2019) (per curiam) ("We decline to affirm the [district] court's jurisdictional ruling on timeliness grounds because 'the Rule 60(b) one-year filing deadline is an affirmative defense,' not a jurisdictional bar, and Williams must be given the 'opportunity to make a case for timely filing.'" (quoting *McCrae*, 793 F.3d at 401)); *Fortune v. Clark*, 712 F. App'x 296, 297 (4th Cir. 2018) (per curiam) ("[T]he Rule 60(b) one-year filing deadline is an affirmative defense, not a jurisdictional bar." (quotation marks omitted; quoting in part *McCrae*, 793 F.3d at 401)); *see also United States v. Peters*, No. 3:08-cr-186, 2018 U.S. Dist. LEXIS 188335, at *5 (E.D. Va. 2018) ("[D]etermination of timeliness of a Rule 60(b) motion is discretionary, not jurisdictional[.]" (citing *Fortune*, 712 F. App'x at 297)); *Jones v. United States*, No. 5:96-CR-79-BO, 2016 U.S. Dist. LEXIS 60486, at *4 (E.D.N.C. 2016) ("'Rule 60(b) . . . filing deadline is an affirmative defense' and not jurisdictional[.]"(ellipses in original) (quoting *McCrae*, 793 F.3d at 401)). Indeed, the entire decision on a Rule 60(b) motion "is an equitable matter left, in the first instance, to the discretion of a district court" to which the Fourth Circuit directs a "deferential standard of review" that "recognizes the district court's superior position for

evaluating the merits." *McCrae*, 793 F.3d at 401 (quoting in part *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014)).

Omnicare's fraud, misrepresentation, or misconduct under Rule 60 could not be a more quintessential example of circumstances in which application of equitable tolling or other discretionary relief from the one-year deadline is not only permissible, but necessary. As this Court has previously observed,

> [E]quitable tolling has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant," while "in the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time."

*Nelson v. Fed. Bureau of Prisons*, No. 5:14-cv-26506, 2016 U.S. Dist. LEXIS 3693, at *14 (S.D.W. Va. 2016) (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)); *see also Gayle v. UPS*, 401 F.3d 222, 226 (4th Cir. 2005) ("Equitable tolling has also been appropriate 'where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990))). Both of these prongs are satisfied under these deeply troubling circumstances. Plaintiffs have filed this motion a mere 20 days after learning of Omnicare's extensive pattern of misconduct in concealing its possession of highly material evidence, and a mere 19 days after the one-year mark had passed. This motion is therefore timely as a matter of law.

### IV.    Conclusion

When building or defending a case, it matters tremendously what your evidence is and where it comes from. Every lawyer knows this. Omnicare knew this, which is why it spuriously questioned the legitimacy of Plaintiffs' delivery information. It parlayed such false questions into direct assaults on the credibility of Plaintiffs' expert and the assumptions that he was forced to

make to fill in the gaps of the delivery evidence that Plaintiffs had managed to piece together from third parties. And every time that Omnicare made such phony attacks, it did so knowing full well that it secretly possessed a more complete set of the very information that it was pretending to doubt and question—all while openly denying such possession to this Court, to the jury, and to Plaintiffs.

There could not be a clearer example of Rule 60(b)(3) misconduct. Abundant caselaw from the Fourth Circuit emphatically agrees. This judgment has been irreversibly tainted by the manner in which it was procured. Omnicare's wrongful concealment of this evidence began in discovery and metasticized all the way through trial and beyond. It is impossible to sever Omnicare's misconduct in a manner that would preserve a shred of integrity in this result. As the Fourth Circuit has expressly held:

> [W]e acknowledge the important consideration of finality of judgments, but the fairness and integrity of the fact finding process is of greater concern and a party's failure to produce a requested document so favorable to an adversary impedes that process and requires redress in the form of a new trial.

*Schultz*, 24 F.3d at 630–31.

Due to the gravity of this situation, Plaintiffs respectfully request oral argument on this motion in order to fully address any questions the Court may have. Following a full and fair examination of these deeply troubling events, Plaintiffs respectfully submit that justice will only be served if the judgment is set aside under Rule 60(b)(3).

Respectfully submitted,

**ERIC YOUNG, et al.**
*By Counsel*

/s/ Thomas R. Goodwin (WVSB #1435)
Thomas R. Goodwin (WVSB #1435)
Susan C. Wittemeier (WVSB #4104)
Richard D. Owen (WVSB # 2794)
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
(304) 346-7000/(304) 344-9692
trg@goodwingoodwin.com
scw@goodwingoodwin.com
rdo@goodwingoodwin.com
*Counsel for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**ERIC YOUNG, Individually
and on behalf of all others
similarly situated,**
   *Plaintiff,*

*v.*             Civil Action No.: 5:16-cv-09788

**OMNICARE, INC.; et al.,**
   *Defendants.*

### CERTIFICATE OF SERVICE

  I hereby certify that on March 21, 2019, a true and correct copy of the foregoing "**Memorandum of Law in Support of Plaintiffs' Motion for Relief from Judgment**" was served via CM/ECF upon the following counsel of record:

David K. Montgomery
Jackson Lewis P.C.
PNC Center, 26th Floor
201 E. Fifth Street
Cincinnati, OH 45202
*Counsel for Omnicare Defendants*

Marla N. Presley, Esq.
Bethany Wagner, Esq.
Jackson Lewis, P.C.
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
*Counsel for Omnicare Defendants*

Joseph M. Price
Davis S. Russo
W. Bradley Sorrells
Robinson & McElwee, PLLC
PO Box 1792
400 Fifth Third Center
700 Virginia Street East
Charleston, WV 25326
*Counsel for Omnicare Defendants*

/s/ Thomas R. Goodwin (WVSB No. 1435)